[Civ. No. 8706. Third Dist. June 3, 1955.]

FRED J. CARON et al., Respondents, v. PARLEY G. ANDREW et al., Defendants; FARM SERVICE COMPANY (a Corporation), Appellant.

Aiken, Kramer & Aiken and Bauer E. Kramer for Appellant.

G. Clayton Wilkinson for Respondents.

VAN DYKE, P. J.—Much of the background of this appeal is reflected in our opinion in *Caron* v. *Andrew,* 3 ·Civil No. 8595 (*ante,* p. 402 [284 P.2d 544]).

This appeal is from a judgment rendered in favor of respondents Caron and Oliver, copartners, against Farm Service Company, a corporation. The judgment rests upon breach of an implied contract for the payment of the reasonable rental value of two pieces of equipment suitable for use in leveling land. The equipment had been leased by respondents to Andrew Brothers. Apparently the arrangement was what is commonly called a purchase lease agreement, whereunder a rental is charged for use of equipment and the payments made are credited upon the purchase price, the title passing when the payments aggregate that price. Andrew Brothers had been using the equipment on work in or near Stockton, California, when they entered into a contract with Grimes and Picchi, owners of a tract of real property, for the leveling of that property to fit it for farming. Appellant Farm Service Company guaranteed their performance of that contract. Andrew Brothers informed respondents that they wanted to move the machinery to the farm job, and respondents, consenting, wrote a letter to them reading as follows:

"We are herein reviewing the amounts showing as a balance on the DW 10 'Jeep' and the converted Catipillar Tractor D8. Also the Mississippi Wagon.

"Our books show a balance of $5635.00 on the Jeep and Mississippi Wagon. $4010.00 on the D8.

"We are to receive $2.50 per hr. of running time as payment on the DW 10 'Jeep' also $2.00 per running hr. on the D8.

"It is understood that this rental is to apply on the purchase of this above mentioned equipment.

"All payments are to be made direct to this office."

Andrew Brothers entered upon the performance of the land leveling contract and moved the subject machinery to the work, where it was used for a period extending from August 15, 1950, to October 25, 1950. At that time Andrew Brothers ceased work on their contract and, as the court found, appellant Farm Service Company took over the work of completing the leveling contract with the consent of Grimes and Picchi. Pursuant to those arrangements appellant went upon the property. The subject machinery was there. Some repairs were needed to fit the machines for further use and appellant undertook to make them. There was testimony by Parley Andrew, one of the Andrew Brothers, that under these new arrangements he was employed by appellant to

supervise the completion of the leveling contract; and that he told respondents that appellant had undertaken to complete the work and wanted to use the machinery for that purpose and would pay for such use. Appellant knew that Andrew Brothers had used the machinery on the job, and that it belonged to respondents. Before repairs could be completed and before any leveling work was begun heavy rains set in and the machinery was placed on high ground for its protection. Mr. Dixon, an executive officer of appellant, had given instruction to one Aksland, a man skilled in land leveling whom appellant had' retained as general supervisor for the work, to use the equipment that was on the job. Shortly after the rains began the river levee bordering the subject property broke, partially inundating the land, and, in a short while and before any leveling work was begun by appellant, further breaks occurred, completing the inundation. Appellant itself, in turn, abandoned the contract on February 24, 1951. Appellant returned one piece of equipment to respondents on February 10, 1951, but did not return the other until August 10, 1951. Prior to that date and on March 5, 1951, respondents began this action to obtain compensation for the retention and use of its equipment.

The trial court found that respondents were in the business of rental and repair of farm and construction equipment; that on August 14, 1950 they had delivered the equipment to Andrew Brothers for use in the leveling work; that Andrew Brothers used it during the period from August 15th to October 25th of 1950; that the equipment was not used on the leveling job after October 25th; that the equipment had been turned over to Andrew Brothers under a rental purchase agreement, confirmed on August 14, 1950, by the letter hereinbefore quoted; that the reasonable rental value of the D-8 caterpillar tractor was $700 per month and that the reasonable rental value of the DW-10 caterpillar tractor was $950 per month; that on November 15, 1950, appellant took possession of the machinery and retained it for its use and benefit with the knowledge and assent of respondents; that appellant knew the equipment belonged to respondents and had been rented by them to Andrew Brothers and that respondents expected to be paid for its use; that "under all of the circumstances of said taking and use of said equipment, said defendant [appellant] impliedly agreed with plaintiffs [respondents] to pay them the reasonable rental value of the use thereof." The court gave judgment for a total sum of $10,533.30 as being

the reasonable rental value of the two pieces of equipment for the period each had been retained. It has been conceded that as to the DW-10 caterpillar tractor the period of its retention was found to have been five days in excess of what it should have been found to be and that, therefore, the judgment rendered is to be reduced in the sum of $158.30. The trial court also offset against the total rental value the sum of $260.01, which appellant had paid to repair one of the machines.

It is the contention of appellant that the evidence is insufficient to support the trial court's findings that an implied contract was entered into between appellant and respondents whereunder appellant agreed to pay respondents the reasonable rental value of the two machines, or the findings that it took and retained the machines pursuant to that contract for the periods fixed in the findings. This contention cannot be sustained. The rules to be applied in determining whether or not an implied contract has been entered into are well settled.

"A contract is either express or implied."

"An express contract is one, the terms of which are stated in words."

"An implied contract is one, the existence and terms of which are manifested by conduct." (Civ. Code, §§ 1619-1621.)

"Contracts are often spoken of as express or implied. The distinction involves, however, no difference in legal effect, but lies merely in the mode of manifesting assent." (Rest., Law of Contracts, § 5.)

"It is generally held that the existence of an implied contract is usually a question of fact for the trial court. Where evidence is conflicting, or where reasonable conflicting inferences may be drawn from evidence which is not in conflict, a question of fact is presented for decision of the trial court. . . .

"Further, on appeal we must draw all reasonable inferences in favor of the judgment." (*Medina* v. *Van Camp Sea Food Co.*, 75 Cal.App.2d 551, 556 [117 P.2d 445].)

"Express and implied contracts both are based upon the intention of the parties and are distinguishable only in the manifestations of assent. The making of an agreement may be inferred by proof of conduct as well as by proof of the use of words.

. . . . . . . . . . . . . .

". . . Before a contract may be implied, however,

it must be determined as a question of fact whether the parties acted in such a manner as to provide the necessary foundation for it, and evidence may be introduced to rebut the inferences and show that there is another explanation for the conduct. Such a contract is inferred from the conduct, situation, or mutual relation of the parties and enforced by the law on the ground of justice. It is implied where facts and circumstances show a mutual intention to contract, and without such mutual intention there can be no contract in fact. . . .

"Both express contracts and contracts implied in fact are founded upon an ascertained agreement, or, in other words, are consensual in nature, the substantial difference being in the mode of proof by which they are established." (12 Cal.Jur.2d "Contracts," § 4.)

 When appellant, with the consent of Grimes and Picchi, undertook to complete the leveling contract, the first requisite, of course, was that Grimes and Picchi make available to it such possession of the subject land as was necessary for the performance of its undertaking. Into such possession of the land appellant entered and upon the land was the equipment in question. Not only did it also take possession of the equipment that had been rented to Andrew Brothers, but it also exercised dominion over it, declared its intention to use it as Andrew Brothers had used it and embarked upon making repairs to it to fit it for such use. Certainly the trial court could hold that appellant expected to pay for it, and in the absence of appellant's having made any other arrangements with respondents, the court could find appellant expected to pay the reasonable rental value of the machinery while possessing and retaining it. It is true that inclement weather, followed by floods, prevented any actual use of these machines in leveling work, but that does not detract from the evidence that appellant intended to keep and use the machines. This concept is further strengthened by the fact that it did return the machines to respondents, one within a short time, the other after a long time. The trial court could certainly suppose that machinery of the type here involved would not be taken and retained by appellant without appellant's expecting to pay substantial sums for its retention, even though in fact being unable, because of weather and flood conditions, to make the intended use of

it. If appellant was not satisfied with the reasonable rental value standard of pay it should have undertaken to make an express bargain. It did not take or attempt to take an assignment to it of the contract which Andrew Brothers had on the machines and the court could, therefore, find that it had no intention of making, and did not make, any promise, measured by the provisions of that agreement. The evidence sufficiently supports the findings.

The judgment is affirmed, save that it is reduced in the conceded sum of $158.30. Respondents will recover costs.

Peek, J., and Schottky, J., concurred.

A petition for a rehearing was denied June 28, 1955, and appellant's petition for a hearing by the Supreme Court was denied July 27, 1955.