S. Samuel Di Falco, S.
Three life insurance companies held proceeds of life insurance policies, totalling more than $200,000, pursuant to the terms of settlement agreements made between *486 the respective insurers and the decedent. Each policy provides for segregation into shares for named beneficiaries, payment of income to the specified beneficiary for life, and upon his or her death, delivery to the executors or trustees under the decedent’s will of the fund so set apart for that beneficiary. The main question presented in this accounting proceeding is the disposition of the moneys paid by the insurers after the death of the first of the beneficiaries to die. Decision on that issue will determine the disposition of amounts that will be paid by the insurers as other beneficiaries shall die.
The will divides the residuary estate of the testatrix in four equal parts, and in almost identical text creates four separate trusts, one for the primary benefit of her sister and the others for the primary benefit of three nieces. It will serve convenience to refer to these four as the trust beneficiaries, although a charity is the secondary beneficiary and the remainderman of each trust.
The settlement agreement with New .York Life Insurance Company covered nine policies of insurance on the life of the decedent, and directed the division of the entire proceeds into four separate funds. One of the funds is to be held for each of the four trust beneficiaries, with interest on the fund payable monthly to her for life. Upon the death of any such beneficiary, the decedent directed that the principal and any accrued interest on such separate fund shall be paid by the insurer “ to the Trustees designated in my last Will and Testament ”. The settlement agreement with The Mutual Life Insurance Company of New York encompassed the proceeds of four policies and provided for a division of the proceeds into five separate funds for the four trust beneficiaries and for a nephew, Alfred Freen. The provisions for payment of income are similar to those in the other settlement agreement just discussed. Upon the death of each beneficiary, the principal of his or her share is to be paid by the insurer “ to the executors or administrators of the insured ”. The settlement agreement with the Prudential Insurance Company also provides for division into five separate funds for the benefit of Alfred Freen and the four trust beneficiaries and directs payment of income to each during his or her life. The following provision is made for payment of the principal of each fund at the death of the beneficiary: “ If the' last will and testament of the Insured * * * designates trustees to receive payment of said share of the proceeds of this Policy and if any such designees qualify as trustees to receive said share * * * said share shall be payable forthwith to such designees as may qualify and accept the trusteeship, Trustees, Beneficiaries.” If the conditions just quoted are not *487 fulfilled, the share is payable ‘ ‘ to the executors or administrators of the Insured. ’ ’
The settlement agreements were made in 1939, 1940 and 1949. The last will of the testatrix was made in April, 1952. Reference is made in the argument to an intermediate will, but that instrument is not in evidence in this proceeding.
Ethel Lhowe, one of the four trust beneficiaries, survived the testatrix by more than two years. After her death the trustees under the decedent’s will received funds from New York Life Insurance Company, and the executors under her will received the fund held by each of the other two insurers. The total received from all insurers is $50,857.33. The disposition of this sum is the immediate question before the court.
The will of the testatrix attempts to dispose of the insurance funds only in paragraph (b) of article twenty-fifth. That article first disposes of the principal of each of the four equal residuary trusts, and in paragraph (a) directs that upon the death of each of the four beneficiaries named in paragraphs (a) to (c) inclusive of article twenty-fourth, 11 the then remaining principal of the trust established for her benefit shall be paid to the Solomon and Dora Monness Shapiro Benevolent and Educational Fund, Inc.” Paragraph (b) reads: “ If, at the date of the death of the last survivor of the aforesaid four life beneficiaries named in Article ‘ Twenty-fourth ’ above, any sum or sums of money shall remain payable to my executors and Trustees from any life insurance policies on my life or from any other source whatsoeArer, upon receipt of such sum or sums my executors and Trustees shall pay them to the Solomon and Dora Monness Shapiro Benevolent and Educational Fund, Inc.” (Emphasis added.) The quoted text quite plainly and clearly refers to a set of circumstances which have not yet come to pass, namely, the death of the last surAdvor of the four trust beneficiaries. Interpreted literally, that text does not cover the circumstance of the death of the first of the four to die. Howex^er, to read this text in its setting, it is necessary to consider other portions of the Avill.
The only other reference to the insurance funds is an oblique reference in the paragraphs dealing with payment of income. The provisions in each of the four paragraphs in article twenty-fourth are substantially identical. Paragraph (b) relates to the share of Ethel LhoAve, the deceased trust beneficiary. It directs the trustees to pay to her out of the income of that share, or, if necessary, out of principal, “ a sum which, when added to the amounts payable monthly to her under certain paid-up policies of insurance on my life, under options heretofore *488 exercised by me, shall constitute a total income to her of Twenty-Five ($25.00) Dollars per week for each and every week commencing with the date of my demise and ending with the date of her demise. However, my Trustees are hereby authorized and empowered to pay to the said Ethel Lhowe or to apply for her benefit at any time or from time to time such additional sum or sums from the income or principal of this trust as my Trustees in their sole discretion may deem necessary to provide for her proper care, (including medical care and treatment and hospitalization) comfort, maintenance and support or for any other need that she may have, and I hereby direct my Trustees to give preference to her needs in determining any amount to be paid to her from principal or income rather than to the conservation of principal or income for the benevolent and educational beneficiary hereunder.” Any income in excess of that paid to the niece is to be paid to the benevolent institution named for the testatrix and her husband, which is also the remainderman of the trust.
The will of this testatrix is not a short or simple document. It evidences an intent to benefit many individuals and many charities and to create memorials for members of her family. There are several specific legacies and a large number of general legacies to individuals and to charitable and educational institutions. The testatrix explicitly exercised in favor of designated charities a power of appointment granted to her in the will of her deceased husband. However, none of these provisions of her will shed any light upon the question of construction now before the court.
Article twenty-third disposes of the rest, residue and remainder of her estate. It is couched in the familiar text of residuary clauses. It covers property “ of every kind and description and wheresoever situated, of which I may die seized or possessed or in or to which I may be entitled (hereinafter referred to as my ‘ residuary estate ’) * * * ”. This residue is to be divided in the four equal parts described hereinabove. The testatrix expressly directed that her residuary estate shall not be deemed to include any property over which she had a power of appointment under the will of her husband. Aside from this exclusion, there is no other explicit or implicit limitation of the residue or restriction of its terms.
A true residuary bequest has been referred to as “ a dragnet that will cover every interest not effectively disposed of otherwise.” (Oliver v. Wells, 254 N. Y. 451, 458.) The rule is firmly established, “ that where the residuary bequest is not circumscribed by clear expressions in the instrument and the title of *489 the residuary legatee is not narrowed by special words of unmistakable import, he will take whatever may fall into the residue, whether by lapse, invalid dispositions, or other accident.” (Matter of Cole, 235 N. Y. 48, 56; Riker v. Cornwell, 113 N. Y. 115, 127.) It is not necessary to find an affirmative and deliberate intention on the part of the testatrix to include the insurance proceeds in the residue. They will fall into the residue when they are not otherwise effectively disposed of and when nothing in the wording of the will excludes them from the operation of the residuary clause, and it makes no difference whether they fall into it by deliberate purpose or by accident or oversight.
The text of paragraph (b) of article twenty-fifth refers clearly and plainly to the date of death of the last survivor of the four beneficiaries. The direction to the trustees to pay sums directly to the charity immediately upon their receipt, applies only to sums received after that date. It is not possible fairly to read that text as applicable to the death of each of the four beneficiaries as each death occurs and to relate it to sums due at each event. To draw that meaning from this text of the will would require a complete revision of the text. As it stands in the will, it is plain and clear and its purpose is understandable. It is true that the same result would follow if paragraph (b) had been omitted altogether. Its mere inclusion, however, does not require us to assume that it was designed to accomplish something different from its plain and ordinary meaning and it certainly does not justify our reading something that is contradicted by its express terms and its clear mandate. It is a fundamental principle of construction that “ we must take what the maker, himself, says in the instrument without changing language, punctuation or grammar to carry out what we may think was intended. Safety lies in giving to the words used by the testator their natural and everyday meaning, and stopping here if they be intelligible.” (Matter of Poonarian, 234 N. Y. 329, 332.)
It is argued that if subdivisions (a) and (b) of article twenty-fifth are read together and if both of them are construed with the insurance settlement agreements, there will emerge a clear pattern which will bring into sharp relief the intent and purpose of the testatrix to give each beneficiary the fruits of two funds during her lifetime, that is, the separate insurance fund set apart for her and the separate residuary trust created for her, and at the death of each beneficiary to vest both of these funds in the charity. This purpose is explicitly stated in respect of the residuary trust. With respect to the insurance funds for the four trust beneficiaries, the argument continues, the wil l *490 treats the principal of the insurance fund and the trust fund as funds that are merged in contemplation, even though not in actuality, and it views the combined income from both as a unified item. The death of any one of the four trust beneficiaries frees both funds. The insurers pay the separate fund to the trustees who will then in fact hold both funds. It is, therefore, asserted that the direction in subdivision (a) to pay the Benevolent and Educational Fund ‘1 the then remaining principal of the trust established for her benefit ’ ’ is intended to mean the corpus of the combined trusts from which the income of that beneficiary was derived. It is claimed that this construction of all instruments is more logical and reasonable and reaches a result more in harmony with the general plan of the testatrix than does a construction which casts each fund into the residue, with a new division into fourths and an allocation to the remainderman of terminated trusts and to the trustees of the continuing trusts.
One difficulty with this argument is that it takes the dispositive language of the will .out of its context and points it toward a preconceived conclusion. The words “ the then remaining principal of the trust established for her benefit ’ ’ refer only to the testamentary trust created for each of the four beneficiaries in the preceding article of the will. That article not only creates trusts and speaks of each one as ‘ ‘ this trust ’ ’, but it authorizes the trustees to invade principal for the care, comfort and support of the beneficiary. The insurance proceeds are not subject to invasion. Hence the reference to “ the then remaining principal ” points directly to the testamentary trust. Moreover, in the same article twenty-fifth (a), when the testatrix made a gift to the remainderman in the event that any one of the four beneficiaries predeceased her, she used the words ‘ ‘ the said one-fourth (%) of my residuary estate reserved for her life ”, a plain reference to the testamentary trust. On the other hand, the testatrix gave ample evidence of her awareness of the insurance settlement agreements, she several times made express reference to them, but never once did she characterize them as part of the testamentary trusts. To say that she nevertheless had them in her mind as part of a combined fund may be as good a guess as any; but it remains in the realm of pure speculation.
Moreover, the function of the court is not to measure the reasonableness or prudence of one plan against the other, but rather to search for the intent and purpose which the will itself declares either expressly or by necessary implication. (Matter of Nelson, 268 N. Y. 255, 258; Matter of Winburn, 265 N. Y. *491 366; Central Union Trust Co. v. Trimble, 255 N. Y. 88, 93.) Three different testamentary plans are discovered in this will by different counsel. All are based to some extent upon a pure guess as to the real purpose of the testatrix. The will of this testatrix may be executed precisely as she has written it. The residuary clause encompasses the proceeds of the insurance policies which are not otherwise expressly disposed of. Each fund will be divided into four parts as directed by the will; one part shall be paid to the trustees of each continuing trust and the balance shall be paid to the remainderman of any terminated trusts. Whether or not this result reflects a deliberate purpose on the part of the testatrix, is, like the constructions which are so strongly urged herein, a matter of pure surmise. When we speak of the intention of the testatrix to include such property in the residue, we do not necessarily mean to imply a studied aim and effort to effect that particular objective, but rather a result which the law ascribes to the expressions which the testatrix has used. ‘ ‘ The question in such circumstances is one not of intention in the proper sense, but of the legal implications of one formula or another.” (Matter of Chalmers, 264 N. Y. 239, 246; New York Life Ins. & Trust Co. v. Winthrop, 237 N. Y. 93, 109.)
The court, therefore, holds that the insurance proceeds are disposed of by the residuary clause of the will. The insurance proceeds now in the hands of the fiduciaries shall be divided into four equal parts. One part shall be paid to the remainderman of the terminated trust; one part shall be paid to the trustees of each of the three continuing trusts.
Other issues have been raised by the rejection of a claim and by the request for instructions respecting a legacy to a charity that has ceased its legal existence. These matters are placed upon my calendar for hearing on the 27th day of January, 1959 at 11:30 a.m.