[Sac. No. 7165. In Bank. Mar. 16, 1961.]

Estate of ALBERT JONES, Deceased. EVELYN KATH-ERINE KAY et al., Appellants, v. KATE JONES, Respondent.

L. C. Smith and Leander W. Pitman for Appellants.

Halpin, Halpin & Leep and Jack Halpin for Respondent.

WHITE, J.—This is an appeal by Evelyn Katherine Kay and Alberta Thompson, daughters of the decedent Albert Jones, from a judgment entered upon a special jury verdict determining that Kate Jones, widow of the deceased, took, pursuant to the latter's will fee title to certain disputed parcels of real property in decedent's estate.

Albert Jones died testate on the 18th day of May, 1956. He left surviving him only his widow and the aforesaid daughters of a former marriage. His will, prepared in 1949

at his request by an experienced attorney at law, provided, insofar as is pertinent here:

"FOURTH: I hereby give, devise and bequeath unto my said wife, Kate A. Jones, the following described real property and all improvements thereon situated in the County of Shasta, State of California, as follows: My interest in the warehouse at the corner of Tehama and Court Streets, Redding; the warehouse on Gold Street, Redding; the apartment house on Willis Street, Redding; the home near Hatchet Creek, together with the household furniture and fixtures situated thereon, to have and to hold the full use and enjoyment thereof during her natural life, free from rent and from all liability for waste, and my said wife, Kate A. Jones shall have the use, possession, occupancy, income and control of said premises for the term of her natural life, and that upon her death, said property together with all improvements thereof, shall vest in and I hereby give, devise and bequeath all of said property upon the death of my said wife, Kate A. Jones, to my daughters, Evelyn Katherine Charles and Alberta Thompson, in equal shares."

After probate proceedings were commenced the respondent widow filed a petition under the provisions of Probate Code, section 1080, seeking determination and declaration of the respective rights and interests of all persons in and to the assets of the estate, and particularly those assets of the estate mentioned in paragraph Fourth. The appellants answered, alleging that the real property described in paragraph Fourth as the Tehama and Court Streets property and the Gold Street property was decedent's separate property, acquired prior to his marriage to the widow; that the Hatchet Creek property was community property; and that under the terms of the will the widow was entitled only to receive a life estate in the decedent's interest in each of the parcels. It appears that the Willis Street property was sold during decedent's lifetime. The matter was tried before a jury, as provided in Probate Code, section 1081. Deeming the will ambiguous the trial court received evidence of extrinsic facts and circumstances attending its execution. The parties argued for and against their conflicting constructions. The jury was instructed as to the canons of construction which should guide them. Verdict forms were submitted for the jury's convenience, and the latter adopted the form which read: "We the jury find the testator, Albert Jones, did intend to give his widow a life estate in the Hatchet Creek real property,

furniture and fixtures, and give her the complete ownership in the other property described in the will.'' Conforming to such verdict, the trial court entered its decree, reciting the verdict as the sole basis therefor.

On appeal the appellants contend: (1) that there was no ambiguity in the language of the will; (2) that the evidence does not support the verdict; (3) that the trial court erred in excluding evidence of the decedent's oral instructions to the scrivener; and (4) that the trial court erroneously instructed the jury. Inherent in these contentions is the theory that the will must be construed, as a matter of law, to create but a life tenancy in the respondent in all four parcels.

The appellants contend that the language of the will is not ambiguous because the natural sense of the words is apparent without regard for the punctuation, in which case the punctuation must be disregarded. They cite *Estate of Williams,* 113 Cal.App.2d 895 [249 P.2d 348], wherein the court said at pages 897 and 898 that the testator's ''intention is to be sought for by looking to the entire will, by examining the language in question, and by determining what was meant by the words actually used. Presumptions and other rules, when necessary, must be used to supplement and aid the application of these primary rules, and not as substitutes therefor. Ordinary rules for punctuation and capitalization are important under some circumstances, but are not controlling when it appears from the natural sense of the language used that a strict application of such rules would distort or change the expressed intention, and prevent a reasonable construction of the will. . . . This principle has been followed in this State. (*Estate of Ottoveggio,* 64 Cal.App.2d 388 [148 P.2d 878]; *Estate of Lewis,* 91 Cal.App.2d 322 [204 P.2d 898]; *Estate of Olsen,* 9 Cal.App.2d 374 [50 P.2d 70].)'' (See also anno., 70 A.L.R.2d 215.) ▉ As applied to the language with which we are here concerned, however, it does not appear that to disregard the punctuation, or even to convert to commas the semicolons which separate the first three parcels referred to in paragraph Fourth, would confer upon the language such ''natural sense'' that the meaning thereof would be free from ambiguity. The language would remain amenable to different constructions as to the extent of applicability of the life tenancy clause.

▉ Moreover, it does not appear in the instant case that we can properly disregard the punctuation. This is not a situation wherein the meaning of particular language would be

536

altered or become more obscure by the application of the usual rules of punctuation. The punctuation is now a part of the will itself; it was grammatically used and inserted by an attorney experienced in drafting testamentary documents. Accordingly the punctuation may properly be referred to as an aid in ascertaining the testator's intent. (See *Buck* v. *MacEachron,* 209 Iowa 1168 [229 N.W. 693] ; *Re Poonarian,* 234 N.Y. 329 [137 N.E. 606] ; *Matter of Shapiro,* 15 Misc.2d 484 [182 N.Y.S.2d 443] ; *Matter of Miller,* 202 Misc. 763 [108 N.Y.S.2d 501].)

It is significant that after the description of each of the first three parcels the scrivener inserted a semicolon, whereas only a comma separates the description of the fourth parcel and the clause limiting the gift to a life estate. ▆ A semicolon is used in a "co-ordinating function between major sentence elements, separating them with more distinctness than comma. . . ." (Webster's New International Dictionary, 2d ed., p. 2274.) ▆ It is significant also that in the limiting clause there is no language unequivocally declaring the testator's intent to apply the limitation to all of the parcels. Reference is made therein to "said property" and not "said properties" or "said parcels." We cannot agree with appellants that as a matter of law the limitation is to be applied to all parcels. Nor that it was error to admit extrinsic evidence for the purpose of resolving this patent ambiguity and determining the testator's real intent. (*Estate of Swan,* 5 Cal.2d 635 [55 P.2d 1171] ; *Estate of Carrillo,* 187 Cal. 597 [203 P. 104] ; *Estate of Taylor,* 175 Cal.App.2d 669, 672 [346 P.2d 884].

Of foremost and primary concern is the testator's intent. ▆ It may here be ascertained by considerations of the various circumstances which the testator reasonably may be supposed to have had in mind at the time of execution of the will, in addition to the particular terms of the will and the will as a whole. In the instant case evidence was introduced concerning the companionable and happy marital relationship of respondent and the decedent, and it appears also that he was in close contact with his daughters at the time the will was executed. The parties were married in 1938, at which time the decedent owned only the Gold Street property and a small interest in the property on the corner of Tehama and Court Streets. The marriage was a second one for both spouses, and each had adult children by their former marriages. The respondent worked with her husband in his

drayage business during the early years of their marriage, and from earnings acquired after the marriage they paid for the balance of the property on the corner of Tehama and Court Streets, acquired and paid for the Willis Street property and the home on Hatchet Creek. When the will was executed in 1949 the several properties were producing an aggregate income of approximately $100 per month, with no income being produced by the Gold Street property. The value of the properties in question at the time of the testator's death was approximately $26,500, including the widow's share of the community property, and income therefrom at the time of the trial was approximately $125 per month. When the will was executed the respondent was 62 years of age. At that time the daughters were married and self supporting, whereas the respondent widow had no independent income or means of support. The will provides a gift of the residue of the estate, apparently of no value, to the daughters.

The matter was submitted to the jury on the foregoing record. Although no claim of error is made by virtue thereof, it is to be noted that the construction of a will is a question of law, but that a jury may pass upon such issues of fact as are developed by evidence properly received as an aid in the resolution of ambiguities which appear in the will. In *Estate of Donnellan,* 164 Cal. 14 the court said at page 19 [127 P. 166] : ''It is a fundamental and indisputable proposition that wherever doubt arises as to the meaning of a will, such doubt is resolved by construction and that construction is one of law,—it is an application of legal rules governing construction either to the will alone or to properly admitted facts to explain what the testator meant by the doubtful language. In those cases where extrinsic evidence is permissible there may be a conflict in the extrinsic evidence itself, in which case the determination of that conflict results in a finding of pure fact. But when the facts are thus found, those facts do not solve the difficulty. They still are to be applied to the written directions of the will for the latter's construction, and that construction still remains a construction at law. In such cases where the evidence of facts is in conflict, it is permissible for the court or for the jury, to find the facts and those findings, under firmly established principles, will not here be disturbed. But the application to the will itself of the facts found, admitted or established, presents a question of legal construction, which is as purely a question of law as is a construction of the will without resort to extrinsic evi-

dence.'' ▮ Where there is extrinsic evidence which requires no evaluation there are presented only questions of law as to both factual matters and their application. (*Estate of Platt,* 21 Cal.2d 343, 352 [131 P.2d 825].) ▮ In the instant case the appellants offered no witnesses as to the circumstances surrounding the execution of the will, other than the scrivener, whose testimony was excluded as hereinafter appears. This does not mean, however, that there was no function to be performed by the trier of fact. The evidence nevertheless required a weighing process. It may not have been sufficient to permit the inferences which the respondent widow sought to have established thereby. It could have been disregarded entirely, it could have been given some weight, or it could have been considered to be of controlling significance. Perhaps the trier of fact would be more influenced by the matters brought out on cross-examination than by the evidence offered on direct examination. ▮ ''Where evidence is conflicting, or where reasonable conflicting inferences may be drawn from evidence which is not in conflict, a question of fact is presented for decision of the trial court. (*Medina* v. *Van Camp Sea Food Co.,* 75 Cal.App.2d 551, 555-556 [171 P.2d 445] ; *Caron* v. *Andrew,* 133 Cal.App.2d 412, 416 [284 P.2d 550].)'' (*C. F. Bolster Co.* v. *J. C. Boespflug etc. Co.,* 167 Cal.App.2d 143, 154 [334 P.2d 247].) The factual issues were thus properly submitted to the jury for its consideration.

In the instant case the jury was asked to make a determination of the testator's intent based upon all the circumstances surrounding the execution of the will. It purported to find that the testator intended to give to the respondent the complete ownership of the property described in paragraph Fourth of the will, except as to the Hatchet Creek property. ▮ While it is true that the testator's intent is the ultimate determination sought in the construction of any will, it cannot be said that the trial judge abdicated his duty to apply the law to the facts as determined by the jury in construing the will. A jury may properly be instructed to render a particular verdict if it finds certain facts to exist. (*California Well Drilling Co.* v. *California Midway Oil Co.,* 178 Cal. 337 [177 P. 849] ; *Tonini* v. *Cevasco,* 114 Cal. 266 [46 P. 103].) It is manifest from the foregoing recital of the evidence that the record furnishes ample support for the verdict.

▮ As the appellants claim that the court erred in

excluding certain evidence, it appears that the court sustained an objection to an offer of proof of instructions given to the scrivener by the testator at the time the will was being prepared. The offer was as follows: "Now, if the Court please, we offer to prove by this witness who is on the stand and sworn and ready to testify, that he was instructed by the decedent, Al Jones, that he wanted to give to his wife a life estate in the real property, and in the property described in paragraph four, and that he only wanted to give to her the right of the use of that property, and the life estate, and upon his wife's death that he wanted the will drawn so it would give his daughters the property to be divided between his two daughters, share and share alike. That he was also instructed, and he would so testify, if given an opportunity, that all of this property was his separate property, and that he wanted his separate property to go to his children, for the reason that his wife had a son, and if he were to do otherwise it would funnel his property over into his wife's side, and he directed that it be so drawn that it would not so happen." The foregoing was an effort to prove the oral statements of the decedent as to his testamentary plans and intentions. Section 105 of the Probate Code[1] expressly excludes such evidence. The appellants, however, cite authority to the effect that such testimony is admissible but in each case the testimony was deemed admissible to resolve a latent ambiguity, as distinguished from the clearly patent ambiguity in the present case. (*Estate of Torregano,* 54 Cal.2d 234 [5 Cal.Rptr. 137, 352 P.2d 505]; *Estate of Greenwald,* 19 Cal.App.2d 291 [65 P.2d 70].)

It is finally contended that the court erroneously instructed the jury. In that regard it is claimed that certain instructions offered by the respondent and given by the court required that the jury determine factual matters after first determining whether the will was ambiguous on its face. The determination of ambiguity, it is claimed, should have been a question solely for the court. It appears, however, that the appellants are equally at fault with the respondent in submitting what they now claim to be erroneous instructions to the jury. In at least five instances, instructions offered by the appellants and given by the court advised the jury that

---

[1]Section 105 of the Probate Code provides in part: ". . . when an uncertainty arises upon the face of a will, as to the application of any of its provisions, the testator's intention is to be ascertained from the words of the will, taking into view the circumstances under which it was made, excluding such oral declarations."

prior to making certain findings it was first to determine whether the will was ambiguous on its face. The error, if any, was thus invited by the appellants and cannot constitute grounds for relief on appeal. ▮ Moreover, we having here determined that the will is ambiguous as a legal proposition, no prejudice arose from the fact that the jury also determined it to be ambiguous.

For the foregoing reasons the judgment is affirmed.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., Peters, J., and Dooling, J., concurred.