214 Cal.App.2d 812 (1963)
Estate of ELLEN M. HILL, Deceased. C. WALTER HALL, Petitioner and Respondent,
v.
METHODIST HOSPITAL OF SOUTHERN CALIFORNIA et al., Objectors and Appellants; UNIVERSITY OF SOUTHERN CALIFORNIA, Claimant and Respondent.
Civ. No. 26404. 
California Court of Appeals. Second Dist., Div. Two. 
Apr. 8, 1963.
 Roland Maxwell, Paul H. Marston, Richard W. Olson, Hahn & Hahn, Tanner, Odell & Taft and Donald W. Odell for Objectors and Appellants.
 Stephens, Jones, La Fever & Smith, Maurice Jones, Jr., and Donald P. Clark for Claimant and Respondent.
 No appearance for Petitioner and Respondent.
 HERNDON, J.
 The Methodist Hospital of Southern California and the Southern California School of Theology, hereinafter referred to as the "Methodist Hospital" and the "School of Theology," respectively, have taken separate appeals from certain portions of the order settling the twentieth and final account of the trustee and ordering distribution of the trust created by the will, the provisions of which are the subject of the arguments of the parties herein.
 Ellen M. Hill died on November 16, 1939, and her will dated November 2, 1938, was duly admitted to probate. The decree of distribution, dated August 27, 1941, which created the testamentary trust here involved, provided in part as follows:
 "In the year nineteen hundred sixty (1960) the said trust estate is to be terminated and the principal distributed, one-eighth (1/8) to the University of Southern California for the School of Religion or if there is no such school then to the Southern California Conference of the Methodist Episcopal Church to be divided equally for missions, Methodist Hospital in Los Angeles, Calif. or if none such hospital belongs to the Methodist Church in Los Angeles then to the Methodist Hospital in Omaha, Nebraska."
 The objection of the Methodist Hospital was based upon the allegation "that the University of Southern California, referred to in the will of said deceased, does not now have a School of Religion, and that the School of Religion referred to in the will of said Deceased, is no longer related to, affiliated *815 with, or a part of the University of Southern California."
 The School of Theology, on the other hand, alleged as follows: "That Southern California School of Theology is the same school formerly known as the School of Religion of the University of Southern California prior to September 1, 1956, at which time said School of Religion was discontinued as a part of the University of Southern California."
 "That Southern California School of Theology is the School of Religion intended by the testatrix, Ellen M. Hill, under her will and by the decree of distribution made pursuant thereto, to be the beneficiary of one-eighth (1/8) of said trust estate under the provisions of her will and the decree of distribution quoted above; that by the use of the words 'the School of Religion' therein, the testatrix intended to designate the School of Religion which existed on the date of her will, to-wit, November 2, 1938, and that existed on the date of the decree of distribution herein establishing said trust on August 27, 1941, which is now Southern California School of Theology, the claimant herein."
 "That the testatrix intended, by the terms of her will, and it is intended by the decree of distribution herein, made pursuant thereto, that one-eighth (1/8) of the trust estate on termination of the trust in the year 1960 go to 'the School of Religion' for the purpose of training ministers for religious leadership in churches."
 "That claimant herein, Southern California School of Theology, is informed and believes, and basing its allegations upon such information and belief alleges that there was no School of Religion at the University of Southern California in the year 1960, nor does one exist at the present time, although there is a Department of Religion of the Graduate School of the University of Southern California which is called 'School of Religion'. Southern California School of Theology alleges that there is no connection existing between the School of Religion of the University of Southern California as such school existed at the date of the will of the testatrix, towit, November 2, 1938, and on the date of the decree of distribution herein on August 27, 1941, and the present Department of Religion of the University of Southern California, which is presently named 'School of Religion.'"
 "That by virtue of the above quoted provision of said decree of distribution, as quoted in paragraph IV above, and *816 by reason of law, this claimant, Southern California School of Theology, claims one- eighth (1/8) of said trust estate."
 Notwithstanding that the propositions of law hereinafter discussed have been stated and applied in a great many decisions, appellants' contentions are such as to necessitate their repetition. [1] Although wills are to be construed in accordance with the testator's intent, it is the intent expressed by the words of the will itself which must be given effect rather than some undisclosed purpose or intent that may have existed in the mind of the testator. (Estate of Kincaid, 174 Cal.App.2d 84, 88 [344 P.2d 85]; Estate of Maxwell, 158 Cal.App.2d 544, 548 [322 P.2d 1018]; and Estate of Doane, 190 Cal. 412, 415 [213 P. 52].)
 [2] In other words, a court must give effect to the language of the will, and no intention should be attributed to a testator which cannot reasonably be drawn from the language of the document itself. (Estate of Raymond, 96 Cal.App.2d 808, 813-814 [216 P.2d 515]; and Estate of Somerville, 38 Cal.App.2d 463, 468 [101 P.2d 533].) [3] It is to be presumed that a testator did not intend that which he might have said but did not say in the will. (Estate of Layton, 217 Cal. 451, 458 [19 P.2 d 793].) [4] If the words of the will are clear and unambiguous, the testator's intention is to be derived solely therefrom. (Estate of Owens, 62 Cal.App.2d 772, 774 [145 P.2d 376]; In re Walkerly, 108 Cal. 627, 659 [41 P. 772, 49 Am.St.Rep. 97]; Gore v. Bingaman, 29 Cal.App.2d 460, 469 [95 P.2d 172]; and Estate of Willson, 171 Cal. 449, 456 [153 P. 927].)
 [5a] We think it beyond reasonable debate that it appears from a reading of the above quoted provisions of the instant will that there is nothing uncertain, doubtful or ambiguous in the terms thereof. It states in clear and concise language that upon distribution one-eighth of the trust estate is to go to the University of Southern California. It further indicates very clearly that among the many "schools" that form a part of the named university, the testator intended that this bequest was being made "for the School of Religion." No amount of grammatical gymnastics could possibly twist this unambiguous language into a bequest to the "School of Religion" considered as a separate and distinct entity completely isolated from the named university of which it was but an integral part.
 The language following this clear bequest establishes a condition subsequent, and provides that if the donee university *817 should no longer have a school of religion at the time the trust estate is to be distributed, then the bequest shall go to the Southern California Conference of the Methodist Episcopal Church to be divided by it in a certain prescribed fashion. Neither appellant contends that the named university no longer exists or that there is any latent ambiguity as to its identity.
 In its objections, appellant Methodist Hospital alleges that the university "does not now have a School of Religion, ..." (italics added) and correctly contends: that if this assertion is true, then the bequest to the university must fail and its share must pass to an alternate beneficiary to be applied, in part, for its benefit; and that under no possible interpretation of the will could the failure of the university to have a school of religion cause the bequest to pass to appellant School of Theology, even if this school carried on the identical work previously performed by the university's former school of religion.
 However, the evidence is uncontradicted that the university, at all material times has had, and now has a school of religion. [6] At this point both appellants disclose their failure to recognize that, while extrinsic evidence may be introduced to establish a latent ambiguity as to a specified donee or a particular item of described property bequeathed (Taylor v. McCowen, 154 Cal. 798, 802 [99 P. 351]; Estate of Donnellan, 164 Cal. 14, 20 [127 P. 166]), such evidence may not be introduced "where a will without latent ambiguity expresses a clear intent, ... in an effort to show that the intent expressed was a mistaken one." (Estate of Dominici, 151 Cal. 181, 186 [90 P. 448].)
 [5b] Although they make no contention that there were, or ever were, two "Schools of Religion" at the University, or that any express qualifications were contained in the will prescribing the precise nature, character or functions of the school to be benefited, both appellants nevertheless contend that they should have been allowed to introduce extrinsic evidence which assertedly would have shown such variations in the character and functions of respondent university's school of religion during the intervening years as to require a holding that the university's present school is so dissimilar to the one existing at the time the will was executed that it is not entitled to take.
 Although neither the will nor the order for distribution says so, appellant School of Theology alleges that in fact *818 "the testatrix intended, by the terms of her will, and it is intended by the decree of distribution, ... that one-eighth of the trust estate on termination of the trust in the year 1960 go to 'the School of Religion' for the purpose of training ministers for religious leadership in churches. ..." (Italics added.) Manifestly, the admissibility of the extrinsic evidence offered to prove the quoted allegation was, to say the least, questionable in the circumstances of the instant case.
 The trial court, however, in its consistent efforts to insure appellants a complete hearing, did allow a full presentation of extrinsic evidence regarding the character and functions of the university's school of religion throughout all of the years in issue. At best, this merely demonstrated that the university, which originally had been established by a religious order, gradually developed and established its nonsectarian character.
 With particular reference to the problem presented in the instant case, the evidence established that, although the university's school of religion originally had served the two-fold function of preparing students for the ministry and instructing generally in the field of religion, in 1956, following several years of discussions relating to the matter, it was decided that the portion of its curriculum directed to a function more properly performed by theological seminaries would be discontinued. Appellant School of Theology, acting on behalf of the Methodist Church, cooperated with the university in making this transition and took over this portion of the curriculum insofar as it related to the Methodist faith. Appellant School of Theology is Methodist owned and operated, as the university's school of religion had not been. The university's school continued in the pursuit of its broader functions and developed them more fully and completely over the years following.
 [7] Although there is ample evidence to indicate the interest of the testatrix in the growth and development of the university in its character as a nonsectarian educational institution, it is possible to conjecture that if she had lived until 1956, conceivably she might have modified her will. A court, however, cannot rewrite a will, but must construe and execute its provisions as actually written. (Estate of Herreshoff, 144 Cal.App.2d 597, 600 [301 P.2d 457]; and Estate of Keller, 134 Cal.App.2d 232, 236 [286 P.2d 889].) [8] A Court may not, in the pretense of construction, modify or vary the effect of a testator's plain and unambiguous language. (Estate of Doane, supra, 190 Cal. 412, 416; Estate of *819 Kincaid, supra, 174 Cal.App.2d 84, 88; and Estate of Deacon, 172 Cal.App.2d 319, 323 [342 P.2d 261].) [5c] The trial court, therefore, was entirely justified, both from the reading of the clear language of the will itself, and from the extrinsic evidence admitted, in making the following findings:
 "The University of Southern California is now and ever since its organization, which was prior to November 2, 1938, has been a non-profit educational corporation organized and existing under the laws of the State of California and did have on November 2, 1938, and at all times since that date has had, and does now have, a School of Religion as such term is used in the Last Will and Testament of Ellen M. Hill dated November 2, 1938, and the Decree of Distribution made in these proceedings. ..."
 "That Southern California School of Theology is now and ever since its organization on January 4, 1956, has been a nonprofit educational corporation organized and existing under the laws of the State of California, and operating as a Theological Seminary of the Methodist Church."
 "That University of Southern California and Southern California School of Theology are now and at all times since the organization of the latter have been, two completely separate and distinct corporate entities, with no inter- relation between them as such. That Southern California School of Theology is not and never has been a part of the corporate structure of the University of Southern California, and is not a successor in interest in any way to the School of Religion of the University of Southern California, except in so far as each may claim inspiration from the great men of the Methodist faith who sought the teaching of religion through recognized educational institutions."
 "That the decedent Ellen M. Hill, in executing her Will dated November 2, 1938, by use of the words 'University of Southern California for the School of Religion', intended that the bequest made in her said will, ... should go to the University of Southern California for the school of religion, without any limitations, qualifications or restrictions as to the type of school of religion, there being no conditions, limitations, qualifications or restrictions expressed in decedent's will or the court's decree of distribution as to the sect, nature, type, character and/or functions of such school of religion."
 "That in view of the foregoing findings, it is not necessary to find to whom or to what organization said one-eighth of *820 the corpus of the trust estate would have been distributed had the University of Southern California had no school of religion."
 [9] Both appellants attempt to erect a supporting bastion from which they seek to assault the unambiguous language of the will by emphasizing the fact that the testatrix used the definite article "the" rather than the indefinite article "a" in the expression "to the University of Southern California for the School of Religion." Such choice of articles, of course, was logically and grammatically correct, since the university already had a school of religion at the time she drafted her will, and she naturally referred to it as "the School of Religion." Only if the university had had no such school at the time the will was written would it have been appropriate or natural for her to make the bequest to the university for a school of religion, i.e., one which was thereafter to be established.
 Certainly such use of the definite article cannot reasonably be advanced as sufficient support for appellants' contention that it must be held as a matter of law that the testatrix intended thereby to define, restrict and forever freeze the character, functions and curriculum of the school in the exact form existing on November 2, 1938. [10] For the same reason we must reject appellants' contentions with respect to the effect of the use of the word "such" in the expression "or if there is no such school, then to the Southern California Conference of the Methodist Episcopal Church. ..." (Italics added.)
 " 'Such' is a relative adjective referring back to and identifying something previously spoken of. It naturally, by grammatical usage, refers to the last precedent antecedent. [Citations.] In this respect it is equivalent to 'said', 'aforesaid', 'afore-described' and 'same,' as to all of which the same grammatical rule applies, i.e., in the absence of some controlling reason they refer to the last antecedent. [Citations.]" (Estate of Wallace, 98 Cal.App.2d 285, 289-290 [219 P.2d 910].) Clearly, then, in the instant case, "such school" refers to the University of Southern California's School of Religion, the immediately precedent antecedent, and, since no limitation or qualification is placed on the school when it was first included, such limitations may not be generated by merely referring to it again.
 [11] Lastly, it is apparent from the provisions of the will and the decree of distribution here under review that, when *821 the testatrix intended in any fashion to restrict a bequest, she had both the knowledge and the lingual facility so to do. Thus, she stated that if the bequest to the university should fail because of the condition subsequent relating to its school of religion, the bequest was to pass to another designated institution "to be divided equally for missions, Methodist Hospital in Los Angeles, Calif. or if none such hospital belongs to the Methodist Church in Los Angeles, then to the Methodist Hospital in Omaha, Nebraska." (Italics added.) Therefore, if, as appellants contend, the testatrix had meant to say "or if there is no such school (functioning in part as a Methodist seminary), then to the ..." it appears that she was entirely capable of expressing any such intent.
 The order presented for review is affirmed.
 Fox, P. J., and Ashburn, J., concurred.