[Civ. No. 32121. Second Dist., Div. One. July 3, 1968.]

Estate of JOHN ELWIN CUMMINGS, Deceased. NANCY C. CUMMINGS, Individually and as Administratrix With the Will Annexed, etc., Petitioner and Appellant, v. RONALD LYNN CUMMINGS, Claimant and Appellant.

Covert & Covert and D. P. Covert for Petitioner and Appellant.

Keith A. Pursel, Ronald S. Rizzo and Kindel & Anderson for Claimant and Appellant.

FOURT, J.—Nancy Yost Cummings, widow of John Elwin Cummings, sometimes hereinafter referred to as the testator, appeals in her capacity as administratrix and individually from a judgment rendered pursuant to her petition for a decree determining interests in the Cummings estate. Ronald Lynn Cummings, adult son of the testator by a prior marriage and the other principal beneficiary of the estate, has also appealed from certain designated portions of the judgment. These appeals involve several questions relating to the interpretation of the decedent's will and various codicils thereto.

John Cummings on May 4, 1961, executed a will prepared

at his direction by an attorney, and on June 12, 1961, executed an attorney-prepared first codicil to that will. Sometime thereafter the testator was hospitalized with an infirmity evidently acknowledged by all to be a terminal illness. While in the hospital and shortly before his death on August 2, 1961, the testator prepared and executed several holographic codicils to the same will. These are the second codicil dated July 23, 1961, the third codicil dated July 24, 1961, and the fourth and final codicil dated July 30, 1961. The will and all of the above-described codicils were together admitted to probate on September 18, 1961. The testator's son Ronald qualified as executor under the original will but resigned following an appellate determination that the estate rather than the donees should pay state gift taxes attributable to certain *inter vivos* transfers made by the testator without payment of taxes shortly before his death. (See *Estate of Cummings,* 236 Cal. App.2d 659 [46 Cal.Rptr. 491].) On December 31, 1964, the testator's widow, Nancy Cummings, was appointed administratrix-with-will-annexed and she has continued to serve in that capacity until the present date. ·

Following disputes with Ronald which occurred during the course of administration, Nancy on July 5, 1966, filed the subject petition for a decree determining interests in the estate. In response thereto, Ronald filed a ''statement of interest'' and upon notice to all necessary parties a hearing was conducted to determine the controversy. Nancy and Ronald, the only parties appearing, introduced no evidence but stipulated that the facts were disclosed by the court file and submitted written argument and briefs. The court entered its judgment based upon findings of fact and conclusions of law which interpreted the will and codicils together in light of the facts reflected by the probate file.

Dr. John Cummings, the testator, had one married adult son, Ronald, who completed his medical education shortly before his father's death, and one adopted daughter, Rondi Jean, by a prior marriage. Dr. Nancy Cummings, his second wife and the administratrix herein, is the mother of one son, John J. Rankin, and of two minor daughters of her marriage to the testator, Josephine Cummings and Brenda Cummings.

John Cummings' probate estate was appraised at $307,459.42. Although when he executed his will in May of 1961 John Cummings possessed substantial additional property, he made in the interim *inter vivos* gifts valued at $416,137.20. On the day following the execution of his will and prior to the execution of any of its codicils, the testator

gave to Ronald all of his stock in North Glendale Hospital. He transferred other properties to Ronald and his wife, Marianne, jointly, and to his adopted daughter, Rondi Jean. Thus, the total value of the testator's estate for federal estate tax and state inheritance tax purposes was $723,596.62, including the gifts patently made in contemplation of death.

Dr. John Cummings owned, among other things, certain real property, an office building, and medical equipment at the location, known as 3235-7 and 3241 N. Figueroa St., in Los Angeles, where he engaged in a partnership medical practice. This property was not disposed of during his lifetime, but during probate his surviving medical partner, Dr. James T. Slayback, exercised his long standing option to purchase the testator's interest in this medical practice. Ronald retained and continues to hold and own all of the stock in the North Glendale Hospital which his father transferred to him by *inter vivos* gift.

Nancy preliminarily contends that our decision should rectify two claimed inadvertent errors appearing in the trial court's judgment. (1) The trial court correctly found that the testator left to his widow, Nancy, all of his right, title and interest in certain real property designated as 4359-69 Verdugo Road and 4555 North Figueroa Street together with the furniture, furnishings, and other personal property located at the premises, and four lots on North Figueroa Street standing in the name of Bua. Appellants agree that the judgment, which failed to mention either the four lots or the furniture, furnishings and personal property, should be corrected to provide that these items, pursuant to the second and third codicils, become the property of Nancy. (2) The judgment further provides that " 'All of the rest, residue and remainder' " of the estate shall be distributed to Nancy and Ronald in equal and undivided shares "pursuant to paragraph Eleventh of the Will, and pursuant to stipulation." Paragraph Eleventh of the will directs that the residue shall be divided between all the devisees named in the will with exceptions subsequently revoked by the second codicil. Although Nancy and Ronald stipulated at the hearing that they would share the residue equally and Nancy is not an aggrieved party, she nonetheless contends that the judgment erred in giving effect to her stipulation. As Ronald points out, the stipulation is not inconsistent with the will provisions since Nancy and Ronald constitute the only named devisees entitled to share the residue, all others having been deleted by subsequent codicils, hence no error appears.

The principal issues presented on this appeal are: (1) whether the court erred in awarding the Oklahoma land to Ronald; (2) whether federal estate and state inheritance taxes, including taxes attributable to gifts made in contemplation of death, were properly charged against the residue pursuant to the terms of the will; and (3) whether Ronald is entitled to receive one-half of the proceeds from the testator's medical practice or $600 monthly for thirty months out of said proceeds which were distributed to Nancy.

With reference first to the Oklahoma property, we observe that this land was mentioned in neither the will nor the first codicil, and without mention in a subsequent codicil it would as a matter of course have gone into the residue and might have been sold to pay expenses of administration. The property is mentioned only once, specifically in the July 23, 1961 codicil, the first codicil written by the testator in his own handwriting as follows:

"The Cabazon properties will need be sold for expenses. (The Oklahoma land consisting of 160 acres which may have oil & would advise holding if possible)

"This Oklahoma land was purchased from Mrs. Queen Bailey promising her to leave it with Ronald and if oil is doscovered Jackie Remy of Las Vegas Nevada is to receive ¼ the Income from oil Royalties."

The court interpreted this provision as disclosing the testator's intention to transfer the Oklahoma land to Ronald, subject to an equitable charge in favor of Jackie Remy as to one-fourth of the income from oil royalties, if any, pursuant to the testator's declared promise to his grantor, Mrs. Queen Bailey. We find no reason to depart from this practical construction.

Although the will originally left the Cabazon property to the Seventh Day Adventist Church, that devise was revoked by a subsequent codicil and no specific disposition of the Cabazon property was made thereafter. The testator by the second codicil attempted to remove the Oklahoma land from the residue and substitute for it "if possible" the Cabazon land as a source of funds for taxes and expenses of administration. At the same time, although he did not use technical language of gift or devise, he expressed his desire that Ronald should take the Oklahoma land, and his intention to comply with the promise he made to Mrs. Queen Bailey at the time of the land acquisition appears clear.

"[D]ispositive or operative words are not necessary to create a testamentary disposition of property." (*Estate of*

*Plumer,* 159 Cal.App.2d 389, 392 [324 P.2d 346].) ''Bequests by implication have from remote times been sustained where no direct language in a will is found to support them but where from informal language used such reasonable construction can be placed on it as implies an intention to make a bequest.'' (*Estate of Blake,* 157 Cal. 448, 466-467 [108 P. 287].)

██ ''The primary consideration in construing a will is to determine the intention of the testator as expressed in the language used, and not as it may have existed in the mind of the testator.'' (*Estate of Maxwell,* 158 Cal.App.2d 544, 548 [322 P.2d 1018].) We observe the statutory admonition that ''The words of a will are to receive an interpretation which will give to every expression some effect, rather than one which will render any of the expressions inoperative; . . .'' (Prob. Code, § 102.) If the testator did not intend to carry out his promise, there would have been no reason for him to mention this covenant and we are persuaded that he intended to fulfill the promise if the practical requirements of liquidity for taxes and costs of administration permitted the specific gift. ██ ''[T]he rule is well established to the effect that if the interpretation by the trial court appears to be reasonable and consistent with the intent of the . . . [testator], the trial court should be affirmed even though a different interpretation might seem equally tenable. [Citations.]'' (*Estate of Plumer, supra,* 159 Cal.App.2d 389, 394.)

Insofar as the estate's liability for the payment of taxes imposed as a result of gifts made in contemplation of death, we must construe the terms of the will in the light of the statutory provisions for proration. The proration statutes (Prob. Code, § 970 et seq.) are remedial in character and authorize courts to enforce contribution where the will lacks clear direction that the tax burden due to inclusion of funds transferred outside of probate is to be discharged out of probate assets. (Prob. Code, § 975.)

██ Paragraph eleven of the will provides: ''All of the rest, residue and remainder of my estate, . . . I direct my Executor to sell and reduce to cash and defray my expenses of last illness, expenses of administration, taxes, etc. with said funds.'' Nancy contends that the will does not direct that the probate estate shall pay taxes attributable to nonprobate assets represented by gifts made in contemplation of death after the will was executed. There is no evidence that the testator had such gifts in mind or intended such gifts to be

rendered tax free to the donees by his will provision, and the payment of all taxes from the residuary probate estate would greatly change the total effect of his testamentary scheme from that expressed and clearly intended by him. The will neither mentions taxes on property passing outside of probate nor indicates that the testator considered exonerating from taxes any gifts other than those which arose from transfers of property under his will, and we may presume that the testator did not intend to say that which he might have said but did not say in his will. (*Estate of Hill,* 214 Cal.App.2d 812, 816 [29 Cal.Rptr. 814].)

"Since the burden of establishing a reason for nonapportionment seems to have been placed by most statutes upon those contending for that result, it would seem that the *bare testamentary direction* that all taxes be paid out of the residuary or general estate would apply *only* to property passing *under the Will* unless it specifically refers to the other property, and to be *without* effect *upon inter vivos dispositions,* although the latter may have been drawn into the gross estate for tax purposes." (15 A.L.R.2d 1231.) (Italics added.) Ronald argues in effect that we must consider the will as speaking as of the date of the testator's death. "[I]ntent . . . may here be ascertained by considerations of the various circumstances which the testator reasonably may be supposed to have had in mind at the time of execution of the will, in addition to the particular terms of the will and the will as a whole." (*Estate of Jones,* 55 Cal.2d 531, 536 [11 Cal.Rptr. 574, 360 P.2d 70].)

However, the policy of this state is clearly set forth in *Estate of Armstrong* (56 Cal.2d 796, 800 [17 Cal.Rptr. 138, 366 P.2d 490]) as follows:

"As was stated in *Estate of Buckhantz, supra,* at page 98 [120 Cal.App.2d 92 (260 P.2d 794)] : 'The object sought to be accomplished by the proration statutes is the equitable allocation of the burden of the tax among those actually affected by that burden. [Citations.] '

"The same thought was expressed in *Estate of Cushing,* 113 Cal.App.2d 319, 333 [248 P.2d 482], as follows: 'There can be no doubt that the proration statute definitely expresses a policy that the federal estate tax is intended, in the absence of an expression to the contrary, to be levied, for state inheritance tax purposes, in accordance with the benefit that a person interested receives from the estate. . . . In other words, the proration statute, in the absence of direction in the will to the contrary, expresses a general state policy directing the execu-

tor to pay the federal estate tax and to fix the impact of the tax upon each beneficiary's share of the property that has contributed to the tax.'

"Thus, subject only to the expressed will of the testator to the contrary, it is now part of the fundamental public policy of this state that taxes, in such cases, should be prorated." In referring to the 15 A.L.R.2d 1216 commentary the court further states that "[R]unning through the cases generally is the thought that apportionment of the taxes is the general rule to which exception is to be made only when there is a clear and unambiguous direction to the contrary. Ambiguities are to be resolved in favor of apportionment." There is no "clear and unambiguous" provision in the will to the effect that the estate is to pay the taxes upon gifts made outside of the estate proceedings. (*Estate of Armstrong, supra,* 56 Cal. 2d 796, 802.)

We conclude that the trial court erred in determining that under the provisions of the will the estate was required to pay "all State Inheritance Taxes and Federal Estate Taxes, including taxes resulting from gifts made in contemplation of death; . . ." The tax liability should be prorated so that each distributee will be responsible for his equitable proportion of the taxes (Prob. Code, § 970) and the order of the court should be entered according to the express provisions of Probate Code section 976.

▮ Finally, Ronald claims that he was entitled either to receive payment of $600 per month for 30 months pursuant to the third codicil or to receive an equal share in the real estate and the income from the testator's medical practice pursuant to the terms of the fourth codicil. These contentions, which we shall consider together, are without merit.

"Where the meaning of any part of a will is ambiguous or doubtful, it may be explained by any reference thereto, or recital thereof, in another part of the will. All the parts of a will are to be construed in relation to each other, and so as, if possible, to form one consistent whole; . . ." (Prob. Code, § 103.) ▮ A codicil is to be construed as a part of the will. (*Estate of Shirley,* 107 Cal.App. 267 [290 P. 302].) ▮ Where the meaning of a particular word is questioned, its use in other parts of the will and codicils must be considered, and a word occurring more than once is presumed to have been always used in the same sense so that its meaning may be explained by reference to another part of the will. (*Estate of Vogt,* 154 Cal. 508, 511 [98 P. 265]; *Estate of Schuster,* 137 Cal.App.2d 125, 129 [289 P.2d 847].)

■ The testator in his original will gave to Nancy "all of my right, title and interest in and to my office building and equipment *and medical practice*" (italics added) and the real property at 3235-7 North Figueroa. Subsequently recalling Dr. Slayback's option to purchase the practice in the event of his death, the testator stated in his first codicil that if the option should be exercised he gave Nancy "all of the proceeds of said sale . . . in lieu of my interest in said office building, equipment and medical practice." Nancy was thus clearly entitled to receive either her husband's interest in the medical practice or the proceeds of its sale. In the third codicil the testator provided that "in case of my demise and Nancy C. Cummings is awarded my interest in the office . . . That first Ronald and Marianne be given $600.00 Per Month *out of the Income* for a Period of 2 years and 6 mo. . . ." (Italics added.) A reading of the will and all codicils thereto shows clearly that the monthly payments are to be made to Ronald and Marianne only upon condition that Nancy shall receive the testator's medical practice, and then only out of its income. Where a testator using similar language directed that his wife should pay a monthly sum to his mother "out of the income of said estate" the court observed: "The paragraph . . . is equally unambiguous, clear and explicit and provides that all of the assets . . . shall be distributed . . . [to the wife] and '. . . *out of the income of said estate* . . .' she shall pay the specified sum to respondent. . . . (Italics ours.) This clause is direct, means what it says, provides for a bequest of income only and does not call for interpretation." (*Estate of Erlanger,* 103 Cal.App.2d 659, 661 [230 P.2d 33] ; see also *Estate of Roberts,* 27 Cal.2d 70 [162 P.2d 461].) The income would exist only if the interest received by Nancy was the practice itself, and since Nancy did not receive the practice, Ronald is not entitled to the monthly payment.

The same rules of testamentary construction apply to the fourth codicil, which must be construed by reference to the entire testamentary scheme. (*Estate of Nathan,* 89 Cal.App.2d 789 [201 P.2d 865] ; *Estate of Raymond,* 96 Cal.App.2d 808, 814 [216 P.2d 515] ; *Estate of La Fetra,* 14 Cal.App.2d 599, 601-602 [58 P.2d 678].)

■ The fourth codicil provides: "I John E. Cummings . . . desire that my son Ronald Lynn Cummings being executor of my estate, should if Possible legally, assign ½ of my interest in the North Glendale Hospital to my wife Nancy C Yost Cummings and keep ½ of my interest in above hospital for himself.

*"In addition to this* my son Ronald and my wife Nancy are to receive all my interest in Real Estate at 3235 & 3237 & 3241 No Figueroa and all income from my practice at 3241 No Figueroa to Share Equally." (Italics added.)

This provision shows the testator's intent to make a gift which is dependent upon the performance by Ronald of a legally possible condition, which he never performed, namely, the transfer of a one-half interest in the hospital to Nancy. This codicil effects either a total revocation of the gift of real property and medical office four times affirmed to Nancy by the testator, or only a partial revocation on condition that Ronald should voluntarily substitute another and greater benefit for decedent's wife by transferring to her half of the stock of the hospital. The court is entitled to give consideration to the circumstances the testator may reasonably be supposed to have had in mind when he executed the will. (Prob. Code, § 105; *Estate of Jones,* 55 Cal.2d 531, 536-537 [11 Cal.Rptr. 574, 360 P.2d 70].) Here the testator repeatedly stated his desire that Nancy should have the real property and medical practice, but subsequently realized that he had given Ronald the hospital worth over $100,000 leaving Nancy interests in real property and a medical practice appraised for a total of about $60,000. In his apparent impulse to rectify the inequality, the testator attempted to insure that each of the objects of his bounty should share equally which recognized that he had already placed the hospital beyond his powers of disposition. We are persuaded that the trial court's interpretation of these provisions reasonably effects the testator's intent.

The judgment is modified by adding before the words "to NANCY C. CUMMINGS," in paragraph 1, section F thereof, the words "all of the furniture, furnishings, and all other personal property located at the premises, and four lots on N. Figueroa St. standing in the name of Bua" and adding before the word "Codicil" the words "and Third." The judgment is further modified by deleting from paragraph 1, section 1 line 13 thereof the word "including" and substituting therefore the word "except", and by inserting after the words "contemplation of death" in line 14 the words "shall be prorated among the respective donees thereof pursuant to Probate Code Sections 970 to 976". Paragraph 1 section I shall then read as follows: "The provision in paragraph Eleventh in the Will that 'All of the rest, residue and remainder of my Estate, . . . . . . I direct my Executor to sell and reduce to cash and defray my expenses of last illness, expenses of administration taxes, etc. with said funds' re-

quires the Estate to pay all State Inheritance Taxes and Federal Estate Taxes except taxes resulting from gifts made in contemplation of death which shall be prorated among the respective donees thereof pursuant to Probate Code Sections 970 to 976; but other gift taxes shall be apportioned to the donees of such gifts.''

The judgment as modified is affirmed, without costs to either party.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied July 25, 1968, and the judgment was modified to read as printed above. The petition of the claimant and appellant for a hearing by the Supreme Court was denied September 18, 1968.