[Civ. No. 22278. Fourth Dist., Div. One. July 22, 1980.]

Estate of MARY L. FOSS STOKLEY, Deceased.
CALIFORNIA FIRST BANK, as Executor, etc., et al.,
Petitioners and Respondents, v.
HENRY C. LEE et al., Objectors and Appellants.

COUNSEL

Higgs, Fletcher & Mack, Vincent E. Whelan, Donald H. Glaser, David R. Clark and Linda M. Woolcott for Objectors and Appellants.

Ferguson, Ferguson & Newburn, William Ferguson, Luce, Forward, Hamilton & Scripps, Elizabeth Ebey Benes, Susan Eydenberg Westlake and Robert G. Steiner for Petitioners and Respondents.

OPINION

**COLOGNE, Acting P. J.**—Mary L. Foss Stokley died testate on January 28, 1976, leaving a total estate of more than $1 million. She

disposed of assets totaling approximately $582,000 by her will and two codicils. In her will executed March 1, 1966, Mrs. Stokley left 1,000 shares of stock in the Wooster Brush Company, valued for death tax purposes at approximately $350,000, to appellants Henry C. Lee and Gladys Lee (600 shares) and appellant Paul Smith (400 shares). Her will also bequeathed $15,000 to the Lees and $1,000 to Smith. Mrs. Stokley's will further disposed of miscellaneous items of personal property and made further general bequests totaling $16,000, none of which is directly involved in this appeal. She left the residue of her estate to her niece Sara Weed (75 percent) and nephew Arden Yinkey (25 percent).

In the first codicil executed July 18, 1967, Mrs. Stokley revoked the gifts of stock to the Lees and Smith and replaced these gifts with specific bequests of $15,000 and $10,000, respectively. On September 12, 1970, Mrs. Stokley executed a holographic codicil in which she bequeathed 25 shares of Wooster Brush Company stock to Henry C. Lee if he were still employed by the company at her death.

The balance of Mrs. Stokley's estate, consisting of assets valued at approximately $616,000, was held in a revocable *inter vivos* trust established by her in 1953 and amended in 1962. The trust provided for the following distribution of the trust estate on Mrs. Stokley's death: 300 shares of Wooster Brush Company stock to the Donald Foss Memorial Employees Fund, and the remainder (assets valued at approximately $512,000) to Sara Weed (75 percent) and Arden Yinkey (25 percent).

The will and both codicils were admitted to probate and California First Bank (Executor) was appointed executor on March 26, 1976. On July 21, 1976, the Lees and Smith petitioned for revocation of probate of the 1967 codicil and Mr. Lee petitioned for revocation of probate of the 1970 codicil. The Executor then petitioned for authority to employ a special counsel to defend the codicil contest. On October 12, 1976, the probate court authorized Executor to employ special counsel, expressly reserving for later determination the allocation of attorney's fees and costs of defense and the allowable amount of attorney's fees.[1] Executor then employed special counsel to represent it in resisting the petitions to revoke probate.

---

[1]The order reads in part: "IT IS THEREFORE ORDERED, ADJUDGED AND DECREED AS FOLLOWS: [¶] "1. CALIFORNIA FIRST BANK be, and it is hereby authorized to employ special counsel of its choice to represent the Executor for the pur-

On September 22, 1978, following trial of the codicil contest, a jury returned a verdict for the contestants, the Lees and Smith.[2]

On March 6, 1979, Executor filed a petition for instructions requesting the court to determine whether articles second and seventh of Mrs. Stokley's will require payment of all estate and inheritance taxes from the general assets of the probate estate and, if not, the proper source for payment of taxes. Several weeks later, Executor filed a petition for authority to pay the special counsel's fees, totaling $41,046.92, incurred in defending against the attack on the codicils. Following a consolidated hearing on both petitions, the court found an ambiguity existed in the will and the will contained no clear and unambiguous direction against apportionment of the estate and inheritance taxes. Accordingly, on August 31, 1979, the court ordered (1) inheritance and estate taxes be apportioned among the specific beneficiaries under the will, the residuary legatees and the trust beneficiaries in accordance with Probate Code section 970, and (2) the attorney's fees and costs incurred by Executor in defending the codicil contest be paid from the residue of the probate estate.[3]

---

pose of resisting the petitions for revocation of the first codicil and the holographic codicil of the decedent's Will, such codicils having heretofore been admitted to probate herein.

"2. It is the duty of the Executor to defend these attacks against the validity of the first codicil and the holographic codicil at the expense of the decedent's estate.

"3. The allocation of the costs of defense, counsel fees therefor and the amount of counsel fees to be allowed in connection with this action are reserved by the Court for determination upon application by the Executor upon a conclusion of this litigation."

[2] A separate appeal from the judgment revoking probate of the two codicils is now pending in this court (4 Civ. No. 18680).*

[3] The order reads in part: "2. An ambiguity exists in the Will of MARY L. FOSS STOKLEY.

"3. There is not a clear and unambiguous direction against apportionment of the inheritance taxes and of the estate taxes and such taxes should, therefore, be apportioned among the specific beneficiaries under the Will, the residuary legatees of the estate, and the trust beneficiaries under the inter vivos revocable trust created by the decedent, MARY L. FOSS STOKLEY pursuant to the provisions of Section 970 of the California Probate Code.

"4. The fees, costs and expenses incurred by the Executor in resisting the application of HENRY LEE, GLADYS LEE and PAUL SMITH, contestants, seeking to revoke the admission to probate of the Codicils dated July 18, 1967 and September 12, 1970 are to be paid from the residue of the decedent's probate estate.

"5. The sum of $41,046.92 should be paid to LUCE, FORWARD, HAMILTON & SCRIPPS, special counsel to the Executor, for legal services as set forth in their statement of March 15, 1979, without prejudice to subsequent applications for fees and costs of appeal and possible retrial of the matter."

---

*Reporter's Note: Opinion filed July 22, 1980, not certified for publication.

## I. Allocation of Estate and Inheritance Taxes

Determination of the proper allocation of the estate and inheritance tax burden on Mrs. Stokley's estate depends primarily on the construction of two provisions of her will. For this reason, we summarize the generally applicable principles of will interpretation which govern us in attempting to ascertain Mrs. Stokley's intention.

■ A will must be construed according to the testator's intention and his intention must be given effect to the extent possible (Prob. Code, § 101; *Estate of Russell* (1968) 69 Cal.2d 200, 205 [70 Cal. Rptr. 561, 444 P.2d 353]; *Estate of Armstrong* (1961) 56 Cal.2d 796, 803 [17 Cal.Rptr. 138, 366 P.2d 490]). The intention which an interpretation of a will seeks to ascertain is the testator's intention as expressed in the words of the will, not some undeclared intention which may have been in his mind (*Estate of Cummings* (1968) 263 Cal.App. 2d 661, 667-668 [69 Cal.Rptr. 792]). "In the process of arriving at that intention, different parts of the will are to be harmonized if possible— endeavoring to give expression to all the words of a will (Prob. Code, § 102), referring to other parts of the will to clear up any doubt or uncertainty that may appear with respect to any single part, and construing all parts in relation to each other so as, if possible, to form one consistent whole but 'where several parts are absolutely irreconcilable, the latter must prevail.'" (*Estate of Salmonski* (1951) 38 Cal.2d 199, 209 [238 P.2d 966]; Prob. Code, § 103.) Because the interpretation of a will depends heavily on the facts of the specific case, precedents are not particularly helpful in construing a will (*Estate of Henderson* (1911) 161 Cal. 353, 357 [119 P. 496]).

■ Where extrinsic evidence of the testator's intention is not presented, the interpretation of the will is a question of law, not of fact (*Estate of Armstrong, supra*, 56 Cal.2d at p. 801). For this reason, where the probate court's interpretation of a will is based solely on the terms of the instrument, an appellate court is not bound by the probate court's construction (*Estate of Russell, supra*, 69 Cal.2d at p. 213; *Estate of Meyer* (1966) 241 Cal.App.2d 747, 751 [51 Cal.Rptr. 72]). Nevertheless, if the probate court's interpretation is reasonable and consistent with the testator's intent, that construction should be affirmed, even if some other interpretation is "equally tenable." (*Estate of Cummings, supra*, 263 Cal.App.2d at p. 667.) Here, there was no extrinsic evidence and we examine the will itself to ascertain the testatrix' intent.

■ Apportionment of federal estate taxes among the beneficiaries is provided for by Probate Code section 970, which reads, in part: "[T]he amount of the [federal estate tax on the decedent's gross taxable estate] so paid [by the executor], except in a case where a testator otherwise directs in his will,...shall be equitably prorated among the persons interested in the estate to whom such property is or may be transferred or to whom any benefit accrues."[4] Section 970 expresses a "fundamental public policy" that the burden of estate taxes should be allocated proportionately among the persons benefited, unless the testator expressly directs against apportionment (*Estate of Armstrong, supra*, 56 Cal.2d 796, at p. 800). Because of the strong policy favoring pro rata allocation of taxes, "apportionment of the taxes is the general rule to which exception is to be made only when there is a clear and unambiguous direction to the contrary. Ambiguities are to be resolved in favor of apportionment." (*Id.*, at p. 802.) The parties do not dispute the fact the taxes paid on the probate estate should be charged to the estate and those paid on the trust should be charged to that entity. The only issue presented is whether there should be apportionment of taxes among the various beneficiaries of each of these estates.

■ Mrs. Stokley's will contains two expressions concerning the source for payment of estate and inheritance taxes.

Article second reads as follows: "I direct that all my just debts, including the expenses of my last illness, be first paid out of my estate. I further direct that *all inheritance, estate, succession and other taxes* of a similar nature levied or imposed by reason of my death, together with interest and penalties thereon, if any, *regardless of whom the same may be assessed against, shall be paid by my Executor from the principal of my estate in the same manner as any debt* thereof, and that *my Executor shall not seek reimbursement therefor from any person whomsoever;* provided, however, *my Executor may request of the Trustee of any trust established by me during my lifetime, such amounts as it may deem necessary or advisable to pay any taxes*, penalties and interest, if any, levied by reason of my death." (Italics added.)[5]

---

[4]Provisions having similar effect are found with respect to inheritance taxes in Revenue and Taxation Code section 13401 et seq. (see also Int.Rev.Code, §§ 2205-2207; 26 U.S.C.A. §§ 2205-2207).

[5]The *inter vivos* trust contains the following direction to the trustee: "The Trustee shall, from the principal of the trust estate, furnish funds to the Executors...upon their written request...with which to pay all [death] taxes."

Article seventh of the will reads: "I direct that all inheritance or estate taxes which become due or payable by reason of my death shall be paid from the residue of my estate."

The expression "the principal of my estate" in the second article may be interpreted as a reference to the probate residue where such an interpretation is reasonable under the circumstances (*Estate of Meyer, supra*, 241 Cal.App.2d 747, 751-752). In view of the article seventh language expressing an intention to charge taxes against the "residue of my estate," such an interpretation is not only reasonable but clearly mandated here in order to give effect to every expression of the will (Prob. Code, § 102). Mrs. Stokley's direction to pay estate and inheritance taxes in the same manner as debts is also consistent with an intention to designate the probate residue as the source for payment (Prob. Code, § 750; see *Estate of Armstrong, supra*, 56 Cal.2d 796, 802).

Mrs. Stokley even more strongly disclosed her position in this regard by specifically pointing out that "regardless of whom the [taxes] are assessed against," the Executor is prohibited from seeking reimbursement for the taxes "from any person whomsoever." We construe "person" as referring to natural persons, not the trust, since article second otherwise uses distinct reference to the trustee and the trust. Finally, the will's provision that the Executor may call upon the trustee of any trust created by her to secure the amount necessary "to pay" those taxes merely provides for a means of paying taxes, a source of funding the tax payment apart from looking to the legatees. These provisions are all consistent and leave no doubt the testatrix wanted the individual legatees to receive the gifts free of any tax burden.

The respondents' counsel asserts there is another provision in the will which provides ambiguity in interpreting it.

Article eighth reads, in part: "Recognizing that my Executor has the authority to sell assets of my estate to raise sufficient cash with which to pay my debts, administration expenses and taxes, I empower my Executor to exercise such authority at public or private sale, with or without notice, subject, however, to confirmation by Court, as provided by law." He asserts there are at least four different ways the will can be interpreted in the context of these provisions:

"1. All deaths taxes on her probate and trust estates must be paid from the probate estate.

"2. All death taxes are to be paid from the residue, and to the extent the residue is insufficient, they must be paid 'in the same manner as debts'—the legacies must abate in accordance with Probate Code §750 *et seq.*

"3. All death taxes are to be paid from the residue, and to the extent the residue is insufficient, taxes must be apportioned in accordance with Probate Code §970 *et seq.*

"4. There is no unambiguous directive against apportionment, so all taxes must be apportioned among all beneficiaries, testamentary and non-testamentary."

We do not view the will as providing any confusion as to the testatrix' intent regarding death taxes. The article eighth provisions only provide alternatives for the Executor in dealing with uncertainties in the availability of funds for payment of taxes; it is for convenience in the handling of the affairs of the estate. The Executor is authorized to pay all taxes on probate estate property, as well as trust estate property, imposed, levied, due or payable by reason of testatrix' death. This authority provides the Executor the freedom to carry out the Executor's duties under law by paying all taxes and discharging the obligations in order to obtain the necessary releases to close the probate estate. We view the language of article eighth merely as complimentary to the Executor's obligation to discharge the tax liens on the probate estate. Taxes assessed against the trust could be paid by the trustee and, if this occurred before the Executor was in a position to do so, the Executor then would only be under obligation to pay the unpaid taxes.

The real import of the direction in article second is that payment of taxes should come from the principal of the estate in the same manner as debts. It is a strained interpretation to say the reference to "debts" here means the legatees' interests must be sold to pay the debts or taxes. The will specifically provides another means of raising funds to pay taxes, namely, calling upon the trustee in writing if necessary. That option is not available for the debts. It is clear to us the likeness to debts is only to indicate they are paid from the principal of the estate.

Finally, the fact the Executor is given power to sell assets to pay debts and taxes in article eighth has no relevance to the apportionment of the tax bill. That provision does not refer to or require the sale of any asset subject of a special bequest. It only provides for the contingency that economic or situational events may be present in which some asset must be sold to raise cash necessary to provide for debts, expenses or taxes involved in the probate, and, in such a case, the Executor is empowered to do so with or without notice, subject to court confirmation.

The facts here differ from those found in *Estate of Armstrong, supra,* 56 Cal.2d 796, where the residual beneficiaries would have received nothing had there not been an apportionment. Here it is likely the residual probate estate will be exhausted by the payment of debts, costs of probate, attorney's fees and taxes, leaving nothing for the residual beneficiaries. Those beneficiaries, however, will still receive a substantial sum through the interrelated *inter vivos* trust created by Mrs. Stokley, so they are not being denied an "inheritance" as was the result in *Armstrong.* More important, the will in *Armstrong* contained no express prohibition against seeking reimbursement for tax payments as does Mrs. Stokley's will.

We find the language of the will expresses in a clear and unambiguous fashion all taxes paid by the Executor should be paid free of any claim against the various legatees.

II.  PAYMENT OF ATTORNEY'S FEES

We next consider whether the probate court correctly ordered the attorney's fees incurred in defending the codicil contest paid from the estate. First, however, we must consider respondents' contention the court's order of October 12, 1976, authorizing employment of the special counsel, was a final appealable order which is not subject to later review.

■ Appealable orders in probate cases are listed in Probate Code section 1240 and include "an order...instructing or directing an executor or administrator; directing or allowing the payment of a debt, claim, legacy or attorney's fee." In general, an order not listed in section 1240 is not appealable (*Estate of Elftman* (1958) 160 Cal.App.2d 10, 14 [324 P.2d 977]). ■ The appealability of an order for attorney's fees depends on whether it is an order *directing or allowing the payment of*

an attorney's fee. An appealable order directing payment of an attorney's fee includes "an order requiring the executor or administrator to pay such attorney out of the estate such compensation, on account of services rendered up to that time, as the court shall deem proper, and such payment shall be made forthwith." (Prob. Code, § 911; *Estate of Briggs* (1964) 230 Cal.App.2d 592, 594 [41 Cal.Rptr. 237].)

In *Estate of Elftman, supra,* 160 Cal.App.2d 10, as in the present case, the court issued two orders bearing on the subject of attorney's fees. The first order "authorized" the personal representatives to pay reasonable attorney's fees incurred in a quiet title action to recover property for the estate. The second order "authorized and directed" the representatives to pay a specific sum to a specific attorney. In finding only the second order appealable, the court observed: "The [first] order . . . does not 'instruct or direct' the executor and executrix to do anything. . . . With less reason can it be said that it is an order 'directing or allowing the payment of a debt, claim . . . or attorney's fee,' for in addition to the fact that it is not a direction or allowance, at the time of the order no services had yet been performed, nor in fact, had an attorney even been retained." (*Id.,* at p. 14.)

Similarly, in the present case, the 1976 order merely "authorized" the Executor to employ special counsel to defend the attack on the codicils; it did not instruct or direct the Executor to do anything. Its recital of the Executor's duty to defend cannot be said to require the payment of attorney's fees. Thus, the 1976 order could not qualify as an order directing or allowing payment of an attorney's fee, for, as in *Elftman,* the executor had not even retained special counsel.

It should also be noted since legal services had not yet been performed at the time of the first order, it would be impossible for the court to issue such an order for its authority only permits an order "requiring" payment for "services rendered up to that time." (See Prob. Code, § 911.)

The 1976 order authorizing the employment of special counsel to defend the codicils against attack was, accordingly, not an appealable order. The 1979 order directing payment of a specified amount to Executor's special counsel for services rendered in the contest is appealable and is properly before us. We now consider whether these attorney's fees should be payable from the estate or by the individual beneficiaries.

■ The Probate Code authorizes payment of the executor's attorney's fees out of the estate for "such other litigation or special services as may be necessary for the executor or administrator to prosecute, defend, or perform." (Prob. Code, §§ 902, 910.) Where the statutory authorization applies, the attorney's fees are paid from the estate as an expense of administration in accordance with Probate Code section 750 (*Estate of Stauffer* (1959) 53 Cal.2d 124, 130 [346 P.2d 748]). Allowance of attorney's fees is within the discretion of the probate court, and when the court has made its determination in respect thereto, its judgment will not be interfered with on appeal except only in the face of a plain abuse of discretion (*Estate of Hardenberg* (1936) 18 Cal.App.2d 307, 310 [63 P.2d 1200]). Whether the attorney's services have conferred a benefit on the estate is merely one of several factors which the court may consider in exercising its discretion (*Estate of Briggs, supra*, 230 Cal.App.2d 592, 595).

■ Accordingly, in the present case, we must determine whether the attorney's fees incurred by Executor in defending the codicils against attack were "necessary" (Prob. Code, §§ 902, 910).

Once a testamentary instrument has been admitted to probate, the executor has a duty to defend it against attack and to protect the beneficiaries' interests, as long as he acts reasonably and in good faith in undertaking the defense (*Estate of Petro* (1960) 177 Cal.App.2d 705, 708 [2 Cal.Rptr. 512]). Where an executor is obligated to defend a testamentary instrument, his attorney's fees for the defense are "necessary" and payable out of the estate. "It being [the executor's] duty to defend the will, he was entitled to retain counsel to help him in performing his duty and it follows that the attorney is entitled to extra compensation for extraordinary services out of the estate." (*Estate of Dunton* (1936) 15 Cal.App.2d 729, 731 [60 P.2d 159].)

Appellants do not suggest Executor acted unreasonably or in bad faith in defending the codicils, nor do they contend Executor was not under a duty to do so. Rather, the gist of their argument is that respondents, the residuary beneficiaries under the will, should bear the attorney's fees because they are the only parties who stood to benefit from a successful defense. As a practical matter, this is what will happen, but it must be observed, in the context of the will's provision for the estate's payment of inheritance taxes, the estate as a whole would benefit too by a reduced total amount of state inheritance taxes due if

the first codicil were upheld.[6] The attorney's fees will be payable from the residue of the probate estate, thereby reducing the amount they ultimately receive as residuary legatees. If the residue is insufficient to pay both attorney's fees and taxes, as indeed it appears, the Executor will call upon the trustee for payment of sums necessary to discharge the taxes. Since Weed and Yinkey are the residual beneficiaries under the will as well as beneficiaries of the trust, they will have their ultimate gift reduced by the amount of those fees.

In summary, the Executor was under a duty to defend the codicils against the contest brought by the Lees and Smith for the benefit of the estate and the attorney's fees for the defense were, therefore, "necessary." The order of the probate court properly directed payment of the attorney's fees out of the estate in accordance with Probate Code section 910.

The order is affirmed as it applies to Executor's claim for attorney's fees for Luce, Forward, Hamilton & Scripps, but is reversed insofar as it apportions taxes among the beneficiaries under the will and the beneficiaries under the *inter vivos* trust.

Staniforth, J., and Hamrick, J.,* concurred.

---

[6]As suggested in the petition for instructions, a lesser amount of inheritance tax applies to Sara Weed and Arden Yinkey as class B transferees than to the Lees and Smith as class C transferees. Thus, upholding the first codicil results in the shares, the bulk of the estate's value, going to Weed and Yinkey and the total inheritance tax would be less than if the shares go to Lees and Smith. Accordingly, in the former situation the estate would be perceived as benefitting by reason of reducing the outflow of inheritance tax payments it was obligated to pay under the terms of the will (see Rev. & Tax. Code, §§ 13308, 13309, 13405, 13406).

*Assigned by the Chairperson of the Judicial Council.