[L. A. No. 15503. In Bank.—March 31, 1936.]

ADOLPHINE L. KAUFMAN, Respondent, v. PACIFIC INDEMNITY COMPANY, Appellant.

Chas. E. R. Fulcher for Appellant.

G. A. Bisbee, Harold R. Spence and Lawrence Paul Scherb for Respondent.

Benjamin Elconin, as *Amicus Curiae* on Behalf of Respondent.

SEAWELL, J.—Plaintiff Adolphine L. Kaufman brought this action to recover damages for fraud practiced on her by defendant William Kelley, acting as president and agent of defendant Cooperative Realty Corporation, Ltd. She also named as defendant Pacific Indemnity Company, surety on the statutory real estate broker's bond of the realty company between January 8, 1932, and December 31, 1932. The court below rendered judgment in plaintiff's favor for $4,500 against the realty company and Kelley, and judgment against the defendant surety company for $2,000, the penal sum of the bond, without costs. The defendant surety company has appealed from the judgment against it. The court rendered judgment in favor of defendant Walls upon the allegations of his answer that he was a mere "dummy", who at the request of Kelley received title to certain of the properties herein involved, and immediately reconveyed to Kelley, or to persons designated by him.

■ The appeal of the surety company presents the question this day decided in *Kane* v. *Mendenhall*, L. A. No. 14589 (*ante*, p. 749 [56 Pac. (2d) 498]). We there held that in an action in the superior court against a real estate broker, the surety on his bond may be joined, although the penal sum of the bond does not exceed $2,000, and it is not necessary to commence a separate action against the surety in the municipal court.

Appellant surety company also attacks the sufficiency of the complaint. It contends that it appears from the complaint that in the transaction with plaintiff, defendant Kelley did not act as agent for defendant realty company, or as a real estate broker, but exchanged and sold property owned by him personally, and the bond did not cover fraud in. such a transaction. Section 2 of the Real Estate Brokers' Act (Deering's Gen. Laws, Act 112, p. 25) provided at the time the transactions herein took place as follows: ''A real estate broker within the meaning of this act is a person, copartnership or corporation who, for a compensation, sells or offers for sale, buys, or offers to buy, lists, or solicits for prospective purchasers, or negotiates the purchase or sale or exchange of real estate . . . for others as a whole or partial vocation. . . .

''The provisions of this Act, except as to sections 20a and 20b, shall not apply to anyone who shall directly perform any of the acts aforesaid with reference to his own property.''

■ The appeal from the judgment herein is taken on the judgment roll alone. The case was tried by a jury. The court submitted special interrogatories to the jury in response to which it found that the acts of fraud were not committed by Kelley while acting for himself and in relation to his own property. In the absence of the evidence it must be presumed that it supports the special findings and verdict of the jury.

■ In support of its contention that the amended complaint fails to set forth a transaction in which defendant Kelley was acting as agent for the realty company, a real estate broker, appellant surety company relies on an agreement of exchange annexed to the complaint as an exhibit. Said agreement purports to provide for a transfer to Kelley of property owned by plaintiff in exchange for four lots in Manhattan Beach of which, the agreement recites, Kelley was

the owner. Although the complaint is inartificially drawn, it is plain that plaintiff's case rests upon the premise that said agreement did not represent the true understanding, and that her execution thereof was obtained by fraud. According to the complaint, plaintiff, a widow, owned four parcels of real property. Defendant Kelley, acting as agent of the realty company, represented to her that he had a plan for disposing of her properties for $6,500, which he could not reveal to her; that she must trust him implicitly, turn over her property and pay certain sums of money to him, and execute whatever instruments he required. Thereupon plaintiff executed the "purported agreement of exchange" of April 25, 1932, and deeds transferring her properties to Kelley. Kelley was president of the defendant realty company. Plaintiff alleges that Kelley executed to her deeds to four lots in the city of Manhattan Beach, described as his property in the "purported agreement of exchange", and that it was understood that said lots were transferred to her as security for the promises of Kelley made in furtherance of the plan to dispose of her properties. She further alleges that said lots were encumbered and were of no value.

On the following day, she requested Kelley to return her properties to her and offered to pay him for any services rendered, but he represented that the properties were already under contract of sale. She then requested that an agreement be drawn up to set out the true understanding. Kelley replied that the first requirement of the plan was that plaintiff trust him implicitly, and thereupon he induced her to sign a "purported agreement", in form a listing agreement, authorizing Kelley to sell at $6,500 the four Manhattan Beach lots transferred to her.

By deed dated August 6, 1932, and recorded November 30, 1932, lot 3 of the property in Los Angeles County which Kelley had induced plaintiff to transfer to him was conveyed to Lura A. Frantz, whom plaintiff alleges took without notice of her claim. On December 21, 1932, plaintiff paid $203.50 to Kelley at his request to make payment on a deed of trust on the Manhattan Beach lots.

The above transactions all took place in 1932, while appellant was surety on the bond of defendant Cooperative Realty Company, Ltd. Therefore, in 1933, Kelley represented to

plaintiff that it would be necessary for her to "repurchase" two of the four parcels theretofore transferred by her to him, "in order that they might both win out under this marvelous plan" to dispose of her properties; that "almost before plaintiff could believe it possible she would have her money back with a probable increase of tenfold more than plaintiff dared hope for". She paid $800 in cash and transferred an equity worth $300 in a lot in Los Angeles County to "repurchase" lot 105, in Florida, and $800 to "repurchase" lot 1 in Los Angeles County.

At various times during 1932 and 1933, plaintiff made payments to Kelley totaling more than $300, purportedly for services rendered by him in connection with the plan and for other items. In 1933, he also induced her to exchange stock of the par value of $1100 which she owned and $300 in cash for two lots in Compton, representing that the exchange was temporary.

It is alleged that all these acts were done and representations made in pursuance of a conspiracy to defraud and cheat plaintiff of her monies and properties, and that plaintiff relied on said representations. It is also alleged that in all these matters defendant Kelley acted and was engaged in the business of a licensed real estate broker and salesman and employee on behalf of the realty company. It cannot be held that the exchange agreement, annexed to the complaint as an exhibit, renders the above allegations as to agency a nullity and marks the transaction as the individual transaction of Kelley dealing with his own property. The complaint constitutes an attack on the agreement based on fraud of Kelley, acting on behalf of the realty company, of which he was president. Upon the complaint, plaintiff dealt with Kelley, acting as agent for the realty company, a real estate brokerage firm. The basis of her dealing was that Kelley, acting for the company, was to dispose of her property. This was a real estate brokerage transaction. The transfer by plaintiff of her property, in this analysis, was a transfer to Kelley as agent for the realty company. Plaintiff received a deed executed by Kelley conveying the four Manhattan Beach lots to her. He may have held title in his name as agent for the realty company. If he owned the lots personally, he may, nevertheless, have transferred property owned by him personally

as security for his promises, made as agent of the realty company of which he was president, to dispose of plaintiff's properties under an advantageous plan which he represented he could not reveal to her. As we have heretofore said, the evidence has not been brought to this court, and it must be presumed that it supports the verdict of the jury.

Appellant further contends that its demurrer to the amended complaint should have been sustained for insufficiency and uncertainty in alleging damages. In her first cause of action plaintiff set forth all transactions outlined above, and prayed for damages of $10,261. In successive causes of action, she sought to separate the several acts of defendants, and to allege separate damages therefrom. The manner in which plaintiff arrived at the figure of $10,261 can be ascertained from a consideration of the items of damage as set forth in these successive causes of action. ■ Appellant was surety on the broker's bond of the realty company from January 8, 1932, to December 31, 1932. It cannot be held liable for acts of the broker subsequent to the expiration of its bond. (*Palmer* v. *Continental Casualty Co.*, 205 Cal. 34 [269 Pac. 638].)

■ The basis of plaintiff's claim to damages is that the four parcels of property owned by her and transferred to defendant were worth $6,500. Two of the four parcels were returned to her in 1933, upon her "repurchase". But for this return, the full value of the four parcels would represent the damage to plaintiff, and the surety would be liable for such damage to the extent of $2,000, the penal sum of the bond, since the transfer induced by fraud took place in 1932. Plaintiff alleged that the four Manhattan Beach lots which she received from Kelley were encumbered and were of no value. By virtue of the subsequent return to plaintiff in 1933 of two of the four parcels, her damages have been reduced by the value of these two parcels returned, or the value of the parcels returned less the amount which defendant Kelley charged her as a "repurchase" price—$800 for lot 1 in Los Angeles County, and $800 plus the value of her equity in a contract of purchase, charged for the return to her of lot 105 in Florida. In estimating her damages at $10,261, plaintiff has charged the four parcels at their full value of $6,500, and has added to this amount the sums paid by her in

"repurchasing" the two parcels. This was improper for the reason that two of the four parcels have been returned to her. The estimate of damages also includes those arising from the so-called exchange of her stock in 1933 for the Compton lots. This was a proper item as to Kelley and the realty company, but not as to the surety company, since it took place in 1933, after expiration of the bond. Since plaintiff's damages were reduced by virtue of the return of the two lots to her, she should have set forth the value of said lots. Without such an allegation it is impossible upon the complaint to fix any figure as the damages resulting from the acts alleged.

 The demurrer should have been sustained. However, the defendants answered, the case was tried, and plaintiff's damages were fixed at $4,500, a much lower figure than the amount of $10,261, for which she prayed. Before a case will be reversed for error in overruling a demurrer attacking the sufficiency or certainty of allegations of damage, it must appear that the appellant was prejudiced by the error. Otherwise, under section 4½, article VI of the Constitution, the judgment must be affirmed. Insufficiency in the allegations of damage may be cured by failure on the trial to object to evidence regarding damages insufficiently alleged. In the instant cause the evidence is not before us. In this situation it must be presumed that the issue of damages was fully and fairly tried and that no prejudice has resulted from the court's error in overruling the demurrer. (*Nittler* v. *Continental Cas. Co.*, 94 Cal. App. 498 [271 Pac. 555, 272 Pac. 309]; *Holland* v. *McDade,* 125 Cal. 353 [58 Pac. 9]; *Stephenson* v. *Deuel,* 125 Cal. 56 [58 Pac. 258]; *Williams* v. *Casebeer,* 126 Cal. 77, 84 [58 Pac. 380]; *Rooney* v. *Gray Bros.,* 145 Cal. 753 [79 Pac. 523]; *Dennis* v. *Crocker-Huffman etc. Co.,* 6 Cal. App. 58 [91 Pac. 425].) The complaint stated a cause of action for damages. The uncertainty went only to the amount thereof.

 No doubt the judgment of $4,500 includes items of damage resulting from acts of Kelley in 1933, for which the surety was not liable. But the judgment against the surety is for only $2,000 (the amount of the bond), and in the absence of the evidence and instructions it must be presumed that the court correctly instructed the jury, and that the evidence showed damages of at least $2,000 on account of acts

of Kelley in 1932; for which appellant surety company was liable. The judgment against the surety company must be affirmed.

█ Said surety company has also appealed from an order of the court below denying its motion to strike from the files as to it the memorandum of costs filed by plaintiff, and served on the surety. The judgment for $2,000 against the surety expressly provided that it should be without costs, apparently in reliance on a provision of section 1032 of the Code of Civil Procedure as follows: ''Provided, that the plaintiff shall not recover costs when the judgment is one which could have been rendered by a municipal or inferior court within the same county or city and county.'' Under the authority of *Gould* v. *Moss*, 158 Cal. 548 [111 Pac. 925], where a judgment which does not carry costs has become final, whether correct or not, a defendant cannot be held for costs. A memorandum of costs filed against such defendant will be ordered stricken on motion, and even though no proper motion to strike is made, it must be disregarded. We are of the view that the surety company's motion herein sufficiently presented as the ground for the motion the provision of the judgment providing for no costs against the surety. The notice of motion specifically stated that it would be based on the judgment.

The judgment is affirmed. The order denying the motion to strike the memorandum of costs from the file as to the appellant is reversed.

Langdon, J., Shenk, J., Curtis, J., Waste, C. J., and Thompson, J., concurred.

Rehearing denied. Waste, C. J., and Conrey, J., voted for a rehearing.