[Civ. No. 33351. Second Dist., Div. Five. Feb. 7, 1969.]

Estate of JACOB SHAFER, Deceased. BERT APPELL et al., Contestants and Appellants, v. ALEXANDER CARR, Claimant and Respondent.

Sid Mannheim for Contestants and Appellants.

Frank P. Doherty, Frank W. Doherty and Ralph C. Curren for Claimant and Respondent.

AISO, J.—Five surviving named beneficiaries of a testamentary trust appeal from an order made in response to a petition for instructions (Prob. Code, § 1120) and which directed the trustee to pay the one-sixth portion of the trust income which would have been payable to a predeceased sixth-named beneficiary, if he were alive, to his surviving father, Alexander Carr. The petitioning trustee, Irving Shafer, did not appeal.

We have concluded that the order was erroneous and that it should be reversed.

### The Background

On April 22, 1940, Jacob Shafer executed a will prepared by his attorney, Edward K. Brody. Among other things, the will .set up a testamentary trust in which the appellants herein, Bert Appell, Melvin Appell, Robert Shafer, Carol Shafer Rivin, and Frances Shafer Shaffer, were named income beneficiaries, together with Ronald Carr, since deceased. Jacob Shafer died on August 21, 1942, and his will was thereafter probated.

The portions of the will pertinent to this appeal, involving only the disposition of the trust income, read:

"SECOND: I declare that I am married and that my wife's name is Sarah, and that I have only four children now living, namely, Pauline Appell, Irving Shafer, Ruth Carr and Frances Shafer. The *first three* of the foregoing *are adults*

and Frances Shafer will be 21 years of age on March 27, 1944.

"..............

"FIFTH: I have purposely not made any provision in this Will for my children, Pauline Appell, Irving Shafer and Ruth Carr, not from any lack of affection, but because of my knowledge that they have ample means of their own, consequently instead of leaving anything to them direct in this Will *I have provided for their respective children.*

"..............

"SEVENTH: I give, devise and bequeath the residue of my estate, real and personal, wherever situated, hereinafter termed the trust estate, to IRVING SHAFER, and if he predeceases me, to MORRIS APPELL, and if IRVING SHAFER and MORRIS APPELL predecease me, to AL CARR, in trust, to hold, manage and distribute as hereinafter provided.

"(A)(1) . . . (c) The balance of the net income shall be accumulated and added to the principal until each of the following successively attains the age of 21 years, at which time the said net income shall be paid to them in equal shares:

FRANCES SHAFER, my daughter, born March 27, 1923
CAROL SHAFER, my granddaughter born April 6, 1934
ROBERT SHAFER, my grandson, born February 12, 1937
BERT APPELL, my grandson, born September 16, 1929
MELVIN APPELL, my grandson, born October 29, 1934
RONALD CARR, my grandson, born May 21, 1934.

"(2) In the event of the death of any of the above mentioned income beneficiaries, consisting of my daughter and my grandchildren, the income which such beneficiary would have received had he or she continued to live shall be distributed to the issue of such beneficiary upon the principle of representation. If he or she leaves no issue surviving, such income shall be paid to *the parent* of such beneficiary. If such beneficiary leaves neither issue nor *parent surviving,* then such income shall augment proportionately the income for accumulation and distribution to the other beneficiaries respectively.

"..............

"(4) This trust shall finally terminate upon the death of the last to survive of the then beneficiaries of this trust, to-wit: my wife, SARAH, my daughter, FRANCES SHAFER, and my grandchildren, CAROL SHAFER, ROBERT SHAFER, BERT APPELL, MELVIN APPELL AND RONALD CARR, and the trustee shall distribute the trust estate to the respective issue of each of said beneficiaries who shall not have theretofore terminated their

interest in this trust, but if the then beneficiary of the trust leaves no issue surviving, said distribution shall be to *the parent* of such beneficiary, if living, and if such beneficiary leaves neither issue nor *parent surviving,* the share of such beneficiary shall go to augment the shares of the other beneficiaries hereunder for distribution as hereinabove provided.

"(B) If the payments from this trust to which my wife SARAH, or my daughter, FRANCES SHAFER, or any of my grandchildren, CAROL SHAFER, ROBERT SHAFER, BERT APPELL, MELVIN APPELL or RONALD CARR, may be entitled shall in the discretion of the trustee be insufficient to provide any such beneficiary with reasonable support, care and comfort, the Trustee may pay to, apply or expend for the use and benefit of such beneficiary so much of the principal, up to and including the whole thereof, as the Trustee may deem advisable.

". . . . . . . . . . . . .

"(I) The Trustee may make payments of any income or principal payable to or applicable to the use of any minor or incompetent or to *the parent* of such minor, or directly to such minor, or may apply the same for the benefit of such minor or incompetent." (Italics added.)

The residue of the testator's estate was distributed "to Irving Shafer, as Trustee, in trust to hold, manage and distribute according to the terms and conditions as set forth in the last Will of Jacob Shafer."

Ronald Carr died on November 29, 1952, when 18 years of age, as the result of an automobile accident. He left surviving him, his mother Ruth Carr, his father Alexander Carr (claimant and respondent herein), and his sister Judith Carr, born after the testator's death.

By its order of November 12, 1953,[1] the court acting through Judge Walker found: "That Ronald Carr died on the 29th day of November, 1952, leaving no issue, but leaving a parent, to wit: his mother, Ruth Carr, and that under the provisions of said Article SEVENTH, paragraphs (A)(2), Ruth Carr is entitled to receive one-sixth (1/6) of the net income payable to the beneficiaries hereunder." It then ordered, inter alia, "that the Trustee pay to each of said beneficiaries: . . . RUTH CARR one-sixth (1/6) of the net income from January 1, 1953 . . . ."

Ruth Carr continued to receive one-sixth of the annual

---

[1]Portions of other petitions, accountings, and orders of the court made in years prior to this order will be referred to below. They are omitted here in the interest of brevity.

income until she died on July 19, 1967, leaving surviving her, her husband Alexander Carr and their minor daughter Judith Carr.

On October 31, 1967, the trustee, Irving Shafer, filed a petition for instructions alleging in substance that Ruth Carr had died since the previous accounting, thus leaving only the five other named income beneficiaries of the trust still living; and that "Alexander Carr, husband of the deceased beneficiary, RUTH CARR, and a stranger in blood to the deceased trustor, now claims to have succeeded to her beneficial interest and demands future income distributions to be made to him; but sets forth no basis for his demand."

Alexander Carr did later reply by filing a document entitled "Reply" wherein he stated that his claim is based upon his being the surviving parent of Ronald Carr, but that he would waive his rights as such surviving parent if Judith Carr, the afterborn grandchild of Jacob Shafer, could by mutual agreement with the other beneficiaries be given a "one-sixth distributive share of said Trust estate."

The five named surviving beneficiaries (appellants herein) assert through documents labelled "appearance" and "replication" filed herein that the income which would have gone to Ruth Carr, if she were still living, must now be used to augment the income to be accumulated and distributed to them under provisions of paragraph SEVENTH (A)(2) of the will.

With issue thus joined the trial court after stating that it was taking judicial notice of all documents in the file and after hearing the oral testimony of the trustee, Irving Shafer, pertaining to the conversations which took place between the testator and his scrivener-attorney, Edward K. Brody,[1a] at the time the will was drafted and executed, made the following findings and conclusions, together with others not of moment here: (Finding X) "That it was not the intention of Jacob Shafer, the testator, to restrict the word 'parent,' as used in the Will, to blood relatives of the testator." (Finding XI) "That Alexander Carr is not disqualified or rendered ineligible to be a beneficiary under the Will as to that share of the trust estate, or beneficits [sic] therefrom, bequeathed conditionally to his son, Ronald Carr." It then concluded that Alexander Carr, as the surviving parent of Ronald Carr, was entitled, from and after the death of his wife, Ruth Carr, to take the share of the income which his predeceased son,

---

[1a]Deceased at time of hearing in trial court.

Ronald Carr, would have taken had he survived; and that such income may not be used to augment the shares of income or the assets to be distributed to the five surviving named beneficiaries of the trust (appellants).

It also made a supplementary conclusion of law at the time òf appellants' motion for a new trial that ''the 12 November 1953 Order of Judge Walker, designating Ruth Carr as the parent entitled to the income share previously received by Ronald Carr, is not res judicata of any issue in this case.''

## *Contentions on Appeal*

The appellants couch their contentions upon appeal in interrogatory form: ''1. Is THE WILL AMBIGUOUS ON ITS FACE? 2. Is THE CLAIM OF ALEXANDER CARR RES JUDICATA; REGARDLESS OF A POSSIBLE AMBIGUITY? 3. DOES THE COURT'S RULING BRING ABOUT A DESIRABLE RESULT?'' We interpret these to mean: (1) the trial court erroneously construed the words ''parent surviving'' in the last sentence of paragraph SEVENTH (A)(2) of the will as including Alexander Carr; and (2) that it likewise erred in holding that Judge Walker's order of November 12, 1953, was not res judicata of the issues raised.

### *Alexander Carr Not a Beneficiary*

The nub of this dispute is whether by use of the words ''the parent'' and ''parent surviving'' in the last two sentences of paragraph SEVENTH (A)(2), the testator intended to confine the surviving parent to one of blood relationship to him. We hold that the proper construction is that the testator's intention was to so limit the contingent parental beneficiaries of his grandchildren named as beneficiaries.

The trial court wrote a memorandum opinion. Such a memorandum can serve neither as a factual record, nor as a basis to contradict the findings, nor to ascertain whether the findings are supported by the evidence; but it can be referred to for the purpose of ascertaining the theory of decision. (*Estate of Bernard* (1962) 206 Cal.App.2d 375, 380-383 [23 Cal.Rptr. 828]; *Estate of Johnson* (1966) 240 Cal.App.2d 742, 747 [50 Cal.Rptr. 147]; *Kerr Land & Timber Co.* v. *Emmerson* (1965) 233 Cal.App.2d 200, 218 [43 Cal.Rptr. 333].) The memorandum discloses that the trial court did recognize the existence of an ambiguity and that it was of the opinion that resolution of the issue should be made as a question of law, stating that the ''customary facts and conclusions

of law will serve very little utility when this matter comes on for review by the higher courts.''

The rules of law governing the construction of wills have been comprehensively set forth in the recent case of *Estate of Russell* (1968) 69 Cal.2d 200 [70 Cal.Rptr. 561, 444 P.2d 353] and the authorities, statutory and decisional, collated by Justice Sullivan, so that it is unnecessary to set them all out here. ▮ One rule, however, is that the appellate court is not bound by the construction of a will placed upon it by the trial court where the extrinsic evidence is not in conflict nor the credibility thereof the dispositive factor in arriving at the construction. (*Estate of Russell* (1968), *supra*, 69 Cal.2d at pp. 214-215.)

▮ It is unnecessary to determine whether the ambiguity, if any, is patent or latent since the extrinsic evidence was admitted without objection. Not only do the four corners of the will itself disclose that the testator intended all parental contingent beneficiaries succeeding to the interest of any named grandchild beneficiary to be limited to those in lineal consanguinity, but the extrinsic evidence further corroborates that such was his intent.

After reciting that he has ''only four children now living'' and naming them and indicating whether they are adults or minors, Jacob Shafer then stated, ''I have provided for *their* respective children.'' (Italics added.) In paragraph SEVENTH (A)(1)(c) he named six income beneficiaries by name, giving their dates of birth, and their degrees of relationship to him. In this context, ''the parent'' is the adult child (of the testator) bearing the same surname as each grandchild. The testator then provided in paragraph SEVENTH (A)(2): ''If he or she [referring to named income beneficiaries] leaves no issue surviving, such income shall be paid to *the parent* of such beneficiary. If such beneficiary leaves neither issue nor *parent surviving,* then such income shall augment proportionately the income for accumulation and distribution to the other beneficiaries respectively.'' (Italics added.) ''The words of a will are to be taken in their ordinary and grammatical sense, unless a clear intention to use them in another sense can be collected, and that other can be ascertained. . . .'' (Prob. Code, § 106.) ''The words of a will are to receive an interpretation which will give to every expression some effect, rather than one which will render any of the expressions inoperative. . . .'' (Prob. Code, § 102.) The foregoing construction does give effect to both the definite article

"the" and the singular form "parent" constituting the phrase "the parent." It follows that the phrase "parent surviving," again in the singular form, refers to "the parent" in the sentence immediately preceding that in which those words appear.

Assuming arguendo that the questioned wording in the will is ambiguous, a re-reading of the total will, with the claimed ambiguity in mind, discloses the absence of any specific bequest[2] to anyone related only by affinity, e.g., a son-in-law or a daughter-in-law. This, too, manifests an intention of the testator to limit the objects of his testamentary largesse in this portion of the trust to consanguineous descendants.

The testator's statements to his scrivener-attorney, Edward K. Brody, testified to by Irving Shafer[3] and admitted without objection, likewise prove that it was the testator's intention that only blood relatives "gain an interest in this trust."[4] This testimony stands uncontradicted.

Finally, the conduct of attorney Edward K. Brody, as dis-

[2]Alexander Carr's counsel makes much of the fact that the testator made him a contingent trustee of the trust *sub nomine*, "Al Carr." However, such a designation does not indicate any intent to make a bequest to Alexander Carr.

[3]Relevant portions of Irving Shafer's testimony were: He was present at the times the testator, who was his father, conferred with the draftsman of the will, attorney Edward K. Brody. "Q. What do you recall of the conversations that took place on the second visit? A. On the second visit, Mr. Brody brought the rough draft of the Will, and my father read the rough draft of the Will. And after reading the Will, the rough draft, my father asked him what would happen to the income from the trust if any of the grandchildren should die before reaching 21. And he said that, 'In the event any of the grandchildren would die, your own son or your own daughter would receive the income for life.' . . . Q. When Mr. Brody told your father that in the event a grandchild died before reaching the age of 21 that Jacob Shafer's own son or daughter would be the one to inherit the share of said grandchild, did this explanation appear to satisfy your father? A. Yes. It was." At the third conference, ". . . the Will was ready for signature. My father read the Will and asked Mr. Brody the question, 'Is it possible for a husband or wife to acquire an interest in this trust?' Mr. Brody told my father that, 'It's not possible; that if any—if a grandchild should die without, before reaching 21 or without leaving children, then the income would go for life to the parent of the child, which would be your own son.' Q. Was there any conversation about which parent? A. Yes. Q. What was that conversation? A. Well, my father told Mr. Brody that it is—that—he told him that any monies paid should go to blood relatives. Q. Was there anything further that you recall of this conversation? A. Well, the only—I remember my father, it was always his intention—he told Mr. Brody and he also told it to me—that he did not want anyone except blood relatives to gain an interest in this trust."

[4]Cf. *Estate of Carter* (1956) 47 Cal.2d 200, 207 [302 P.2d 301]; *Estate of Nunes* (1954) 123 Cal.App.2d 150, 158 [266 P.2d 574].)

closed by his trustee's annual accounting and petitions for instructions filed February 4, 1953, is consistent with an intent that in using the words "the parent" and "surviving parent," neither he nor the testator intended to include Alexander Carr as a contingent beneficiary of the trust income.[5]

In the petition, attorney Brody set forth the following significant averments:

"That the beneficiaries under the terms of said trust and the addresses of said beneficiaries are as follows:

"Sarah Shafer, 638 Irving Boulevard, Los Angeles, California;

"Frances Shafer, 638 S. Irving Boulevard, Los Angeles, California;

"Carol Shafer, 610 S. Irving Boulevard, Los Angeles, California;

"Robert Shafer, 610 S. Irving Boulevard, Los Angeles, California;

"Bert Appell, 340 N. Formosa, Los Angeles, California;

"Melvin Appell, 340 N. Formosa, Los Angeles, California;

"*Ruth Carr*, 607 N. Oakhurst St., Beverly Hills, California;

"That Ronald Carr, one of the beneficiaries under the terms of said trust died on or about the 29th of November, 1952, as a result of injuries sustained by reason of an automobile accident; that at the time of his death, he was eighteen (18) years of age, unmarried, and leaving surviving him, *his mother Ruth Carr and his father Alexander Carr*. That it is provided in the said trust that in the event of the death of any of the beneficiaries, that the estate to which the said beneficiary may be entitled, shall be distributed to the persons mentioned in said trust. *That Ruth Carr, mother of Ronald Carr, is a daughter of Jacob Shafer, Deceased, and under the terms of said trust, is entitled to receiver Ronald Carr's share of the Trust Estate.*" (Italics added.)

Attorney Brody thereafter served notices of hearing on the trustee's annual accounting and on the petition for instructions only upon those enumerated as beneficiaries in his petition.

If attorney Brody had used the words "the parent" and

---

[5]Cf. "Acts of the parties, subsequent to the execution of the contract and before any controversy has arisen as to its effect, may be looked to in determining the meaning. The conduct of the parties may be, in effect, a practical construction thereof, for they are probably least likely to be mistaken as to the intent. [Citations.]" 1 Witkin, Summary of Cal. Law (7th ed., 1960) Contracts, § 221, pp. 249-250.

"surviving parent" in drafting the will to include Alexander Carr, then he would have stated that Alexander Carr was a contingent beneficiary in the petition and section 1120 of the Probate Code would have compelled him to send Alexander Carr a notice of hearing. In 1953, section 1120 read in part: "The trustee shall cause notice of the hearing to be mailed to the beneficiaries at their last known addresses, as provided in said Section 1200, whether they have requested special notice or given notice of appearance or not."[6]

The court in its order of February 27, 1953, settling the annual account and report of the trustee and his petition for allowance of fees, recites "all notices of . . . hearing having been given as required by law." By implication, no person interested in the trust estate was omitted. (*Estate of Hensel* (1956) 144 Cal.App.2d 429, 434 [301 P.2d 105].)

Thus the will, whether read by itself or in the light of extrinsic evidence, discloses without contradiction that in using the singular form "the parent" in paragraph SEVENTH (A) (2) of his will, Jacob Shafer's intention was to limit the contingent parental beneficiaries of his named grandchildren to his children named in paragraph SECOND. Alexander Carr, therefore, is not in that class and may not be considered to be the contingent parental beneficiary of Ronald Carr.

### *Effect of Judge Walker's Order of November 12, 1953*

In view of the conclusion that we reach by way of construing the provision of the will in question, we deem it unnecessary to determine whether the order of November 12, 1953, made by Judge Walker, is res judicata of the issues raised by the present litigation.

### *Does the (Trial) Court's Ruling Bring About a Desirable Result?*

We are unable to tell from the record. At the request of appellant's counsel, the trial court made a supplementary finding of fact: "That Ruth Carr died on July 19, 1967, leaving surviving her, her husband Alexander Carr, and her daughter, Judith Carr, born after the death of the testator, Jacob Shafer. That there are a total of four grandchildren (of varied parentage) born after the death of testator, Jacob

---

[6]Currently, this portion of Probate Code, section 1120, reads: "The trustee shall cause notice of the hearing to be mailed to the beneficiaries, including all persons in being who shall or may participate in the corpus or income of the trust, at their last known addresses, as provided in said Section 1200, whether they have requested special notice or given notice of appearance or not."

Shafer, who do not share in the income from the trust. The existence of any after-born grandchildren is immaterial to the issues of this case."

Had the testator, Jacob Shafer, foreseen the situation wherein Judith Carr finds herself, in all probability he would have provided that she or any other grandchild in like situation should take in *pari passu* with the other named surviving beneficiaries (the appellants). (See paragraph FIFTH of the will.) Not being a pretermitted grandchild, Judith Carr has no relief. Not being an issue of a named beneficiary of the trust income, she was never given even a contingent interest. But whatever be the overall equities (which the record does not make clear), courts cannot rewrite a will under the guise of interpretation. (*Estate of McKenzie* (1966) 246 Cal.App.2d 740, 746 [54 Cal.Rptr. 888]; *Estate of Hill* (1963) 214 Cal. App.2d 812, 816, 818 [29 Cal.Rptr. 814]; *Estate of Keller* (1955) 134 Cal.App.2d 232, 236 [286 P.2d 889].)

## *Disposition*

The order appealed from is reversed and the cause is remanded to the trial court with directions to file amended findings of fact and conclusions of law which conform to the views hereinabove expressed.

Kaus, P. J., and Stephens, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied April 2, 1969.