[Civ. No. 26495. First Dist., Div. Three. Dec. 10, 1969.]

Estate of JOSEPHINE C. McCORMACK, Deceased. STEPHEN M. MAYFIELD, Plaintiff and Appellant, v. FRANK STEWART, JR., Defendant and Respondent.

494

**COUNSEL**

Golden & Weinstein and John R. Golden for Plaintiff and Appellant.

Walkup, Downing, Wallach & Sterns, James C. Downing and William B. Boone for Defendant and Respondent.

## OPINION

**CALDECOTT, J.**—This is an appeal from the Order Instructing Trustee to distribute or deliver the corpus of the trust to respondent.

The trust, which was created by the will of Josephine C. McCormack, terminated upon the death of William S. Morrill, on September 11, 1966. Morrill was the son of McCormack. Originally there were other income life beneficiaries, the last of whom died in 1963, and Morrill was the sole income life beneficiary thereafter until his death. Upon termination of the trust the corpus was to go, free from trust, to Morrill's issue, and if Morrill died without issue, to respondent, who was the son of a nephew of Mrs. McCormack.

Appellant as Morrill's adopted son claims to be Morrill's issue and entitled to distribution or delivery of the corpus. Respondent, son of a nephew of Mrs. McCormack, contends that the corpus should go to him.

Since there is no real dispute as to the sequence of events which have taken place in this case, the statement of fact from the appellant's brief has been substantially adopted.

Mrs. McCormack made her will on March 27, 1941. The will was drafted by her attorney, who is now deceased. The property which is the subject of this litigation is a ranch near Suisun, California, on which Mrs. McCormack lived. It had belonged to her father. Mrs. McCormack, at the time she made her will, was married, and her daughter Jane, and Jane's son were living, and so was Mrs. McCormack's son, hereinafter called Morrill. Morrill had been married but was divorced at the time Mrs. McCormack made her will.

Morrill married Beatrice Mayfield on December 5, 1942. Mrs. McCormack knew her and knew of the marriage. The appellant, Stephen M. Mayfield, was born on March 7, 1928, and was in fact Beatrice's son though he was known to Mrs. McCormack and generally, in his school and other records, as her brother. Following the marriage of Morrill and Beatrice, appellant lived with them part of the time, when not absent in the armed forces, until his own marriage. The appellant, as a youngster, often visited the ranch with Morrill.

Mrs. McCormack died on August 21, 1945. On August 27, 1963 Morrill became sole income beneficiary under the testamentary trust. Approximately six months later it became apparent that under the trustee's management the trust would produce very little income. Morrill and the trustee discussed the situation from time to time and after approximately a year with no improvement in income Morrill consulted a friend and attorney, and at approximately the same time presumably inquired about adoption procedures.

On May 11, 1965 Morrill's attorney wrote to the trustee inquiring as to its attitude toward sale of the ranch with court permission, and a more productive investment of the proceeds. On May 13, 1965 the trustee replied to the effect that it realized the income was too low and that it probably would petition the court for instructions, but first wanted a current appraisal of the ranch. On May 24 and 27, 1965 a petition for appellant's adoption by Morrill was signed by the necessary parties. On July 7, 1965 a decree of adoption by Morrill of the appellant as his son was entered. The appellant was 37 years old at the time. The decree provided that thenceforth "said Stephen M. Mayfield to all legal intents and purposes shall be the child of the said William S. Morrill and be regarded and treated in all respects as his lawful child, for the purposes of inheritance and all other legal incidents and consequences." The appellant was not present at the hearing, he was in Hong Kong, China.

On October 11, 1965 Morrill's attorney informed the trustee that by reason of the adoption by Morrill of the appellant there was a remainder-man who would be ahead of respondent in the line of succession, and who would approve a sale of the ranch. On March 4, 1966 the trustee filed its petition for instructions, and on March 15 of that year Morrill and the appellant filed their answer and petition for instructions.

Morrill died on September 11, 1966, and approximately 10 days later the respondent filed an answer alleging the death of Morrill, and seeking an order that the entire trust estate be distributed to him.

The probate court heard the matter on the petition and answer on July 18, 1968, and filed its Memorandum of Decision and its Order Instructing Trustee on November 19, 1968. The probate court concluded that the will was ambiguous and uncertain, and allowed extrinsic evidence to ascertain the intent of the testatrix. The court further found that the testatrix did not intend by the use of the word "issue" to include "adopted children." The court then found that the respondent was the sole distributee of the testatrix's estate remaining in the hands of the trustee, and ordered distribution accordingly.

The Order Instructing Trustee and the Memorandum of Decision are silent as to costs. The respondent filed his memorandum of costs and disbursements on November 22, 1968. Appellant filed his notice of motion and motion to strike memorandum of costs and disbursements on November 25, 1968. Notice of appeal was filed on November 29, 1968. On January 28, 1969 the probate court denied the motion to strike and ordered respondent's memorandum of costs and disbursements be allowed, and that appellant pay the same.

The appellant contends that the trial court erred in admitting extrinsic

evidence to show intent to exclude an adopted person as Morrill's issue. It is appellant's position that the will is not ambiguous and therefore extrinsic evidence was inadmissible.

■ Clause I of Mrs. McCormack's will provides: "My heirs are my husband DUNCAN W. McCORMACK and my daughter, JANE MORRILL WYCKOFF and my son WILLIAM STEWART MORRILL. My property is all separate estate and I therefore do not leave out of the same anything to my said husband. *It is particularly my desire to keep my estate in my only family.*" (Italics added.)

Clause V of the will names the beneficiaries of the trust established, and provides for the distribution of the corpus. Clause V provides in part as follows: "My trust hereinbefore mentioned is intended for the following two branches: 1. The branch represented by my daughter, JANE MORRILL WYCKOFF and her issue. 2. The branch represented by my son, WILLIAM STEWART MORRILL and his issue. The issue of JANE referred to is her son, STEPHEN N. WYCKOFF, JR. As yet, WILLIAM has no issue."

The clause further provides for cross-remainders if either Stephen Jr. or William Stewart Morrill die without issue, and provides that the respondent should take the corpus if both of these people die without issue.

■ The meaning of the words "my only family" in the sentence "It is particularly my desire to keep my estate in my only family" is unclear. The testatrix specifically excluded her husband, apparently because she wanted to keep her estate in her "only family." If her husband, with whom she was living, was not considered part of her "only family" it would seem reasonable to conclude that her intention was to leave her estate to people related to her by blood.

In *Estate of Russell,* 69 Cal.2d 200, 212-213 [70 Cal.Rptr. 561, 444 P.2d 353], the California Supreme Court recently restated the principles governing the use of extrinsic evidence in interpreting written instruments: "Under the application of this general principle in the field of wills, extrinsic evidence of the circumstances under which a will is made (except evidence expressly excluded by statute) may be considered by the court in ascertaining what the testator meant by the words used in the will. If in the light of such extrinsic evidence, the provisions of the will are reasonably susceptible of two or more meanings claimed to have been intended by the testator, 'an uncertainty arises upon the face of a will' (§ 105) and extrinsic evidence relevant to prove any of such meanings is admissible (see § 106), subject to the restrictions imposed by statute (§ 105). If, on the other hand, in the light of such extrinsic evidence, the provisions of the will are not

reasonably susceptible of two or more meanings, there is no uncertainty arising upon the face of the will [citations] and any proffered evidence attempting to show an intention *different* from that expressed by the words therein, giving them the only meaning to which they are reasonably susceptible, is inadmissible. In the latter case the provisions of the will are to be interpreted according to such meaning. In short, we hold that while section 105 [Probate Code] delineates the manner of ascertaining the testator's intention 'when an uncertainty arises upon the face of a will,' it cannot always be determined whether the will is ambiguous or not until the surrounding circumstances are first considered." (Footnotes omitted.)

 "Extrinsic evidence is also admissible to explain any ambiguity arising on the face of a will, or to resolve a latent ambiguity which does not so appear." (*Estate of Torregano,* 54 Cal.2d 234, 246 [5 Cal.Rptr. 137, 352 P.2d 505, 88 A.L.R.2d 597].)

 In the present case when the language of the will is applied to the facts of the case there is an ambiguity created by the use of the term "issue" in clause V of the will. It is immaterial whether the uncertainty is characterized as latent or patent. (*Paley* v. *Superior Court,* 137 Cal.App. 2d 450, 457 [290 P.2d 617].)

Therefore, extrinsic evidence was admissible to show that appellant was an adopted son of the life tenant rather than a natural son. Extrinsic evidence was then admissible to ascertain whether the testatrix intended to include adopted children as issue as that term was used in clause V. The first point was not an issue because the fact of adoption was admitted by appellant.

 This then raises the question of whether there was extrinsic evidence from which it could be determined whether or not Mrs. Mc-Cormack intended "issue" to include adopted children. An examination of the entire reporter's transcript reveals testimony from which the testatrix's intent at the time she executed her will can be determined. There was testimony to the effect that Mrs. McCormack did not like the Mayfields and that she did not like her daughter-in-law Beatrice Mayfield Morrill. The respondent's father was the only nephew of Mrs. McCormack, and they were close friends. The respondent's great-grandfather established the Stewart Ranch during the Gold Rush period of 1849 to 1851. Most of the Stewart family were born on the ranch, and Mrs. McCormack in her will specifically restricted the sale of the ranch[1] to preserve it in the family.

---

[1]"My judgment is that my ranch property is of a character and value such that the same should be retained in the trust and not exchanged for other property and I so provide. The power to sell or to exchange herein conferred upon the trustee shall not apply to the said ranch property unless some unforeseen contingency arises making it absolutely necessary that said powers shall be exercised with respect to said property."

After respondent moved away, he visited the ranch frequently, saw Mrs. McCormack on most such occasions, and returned to help farm it for a time in 1932.

It must be remembered that the policy in this state is to give to an adopted child the same status as a biological one, and the adoption statute has been liberally and beneficially applied. (*Estate of Heard,* 49 Cal.2d 514, 518-519 [319 P.2d 637]; *Estate of Stanford,* 49 Cal.2d 120 [315 P.2d 681].) However, *Estate of Pierce,* 32 Cal.2d 265 [196 P.2d 1], as explained by the California Supreme Court in *Estate of Heard, supra,* holds that there was sufficient evidence aside from the face of the will to show "lawful issue" was not intended by the testator to include adopted children. Consequently, if there is sufficient evidence of a contrary intent, an adopted child does not have to be given the same status as a biological child.

In the present case when the facts are applied to the provisions of the will as a whole, there is sufficient evidence to show that Mrs. McCormack intended to exclude adopted children and to keep her estate in her "only family," i.e., blood relatives.

The appellant contends that evidence as to the circumstances of the adoption in 1965 is not the equivalent of evidence as to the circumstances under which the will was made in 1941 and is not admissible to show the intent of the testatrix, citing *Estate of Bourn,* 25 Cal.App.2d 590, 597 [78 P.2d 193]. Appellant is correct in this contention; however, no prejudice resulted from admitting this evidence.

The appellant next contends that the probate court's order that appellant pay respondent's costs is erroneous because the probate court did not include costs in its Memorandum of Decision or Order Instructing Trustee.

The respondent filed his memorandum of costs and disbursements on November 22, 1968. The appellant filed his notice of motion and motion to strike memorandum of costs and disbursements on November 25, 1968. The notice of appeal was filed on November 29, 1968. On January 28, 1969 the probate court filed its order denying motion to strike memorandum of costs and disbursements and ordered that respondent's memorandum of costs and disbursements be allowed and that appellant pay the same.

█ Costs in a probate proceeding are not awarded to the prevailing party as a matter of right but only within the discretion of the court. █ They must be provided for in the judgment or order. If the judgment does not contain the provision for costs it is futile to file a memorandum of costs. (*Kaufman* v. *Pacific Indem. Co.,* 5 Cal.2d 761 at p. 769 [56 P.2d

504]; *Gould* v. *Moss*, 158 Cal. 548 [111 P. 925].) As stated in *Kaufman*, "[W]here a judgment which does not carry costs has become final, whether correct or not, a defendant cannot be held for costs. A memorandum of costs filed against such defendant will be ordered stricken on motion, and even though no proper motion to strike is made, it must be disregarded."

■ The order of November 18, 1968 made no provision for costs and with the filing of the notice of appeal on November 29, 1968 the probate court lost jurisdiction of the matter and could not award costs.

The respondent raises the point that the notice of appeal did not include this order of January 28, 1969. ■ Actually, an order awarding costs in a probate proceeding is not an appealable order as it is not listed in Probate Code section 1240, and an appeal can be taken only from those orders specified in Probate Code section 1240. (See *Estate of Bartholomae*, 261 Cal.App.2d 839 [68 Cal.Rptr. 332]; *Orth* v. *Superior Court*, 244 Cal.App.2d 474 [53 Cal.Rptr. 156, 25 A.L.R.3d 1348].) However, the order was in excess of the probate court's jurisdiction and is therefore void.

Appellant further contends that findings of fact and conclusions of law are mandatory in this case, and that none were prepared or filed. ■ No issue is raised by either party as to the necessity of findings of fact in this case, and the law is clear that findings are required in contested probate matters. (Prob. Code § 1230; *Estate of Ruben*, 224 Cal.App.2d 600 at p. 606 [36 Cal.Rptr. 752].) As to the conclusions of law, their necessity and importance is stated in 2 Witkin, Cal. Procedure (1954) 1833: "But, despite their mention in C.C.P 632, the conclusions of law are a relatively useless appendage. The important conclusion of law is the *judgment*. If the findings support the judgment it will be affirmed, regardless of whether the findings support the conclusions, or whether the conclusions of law are consistent or properly stated, or even if the conclusions are omitted entirely. [Citations]."

The trial judge did prepare and sign a Memorandum of Decision, in addition to the Order Instructing Trustee, but the appellant maintains that the "Memorandum of Decision" cannot serve as a factual record nor as a basis for ascertaining whether the alleged findings are supported by the evidence. Appellant cites *Estate of Shafer*, 269 Cal.App.2d 538 [75 Cal.Rptr. 39], in support of his position. ■ In a probate proceeding findings of fact need not be set forth in a separate document but may be included in the order. (*Guardianship of Daniels*, 177 Cal.App.2d 376 [2 Cal.Rptr. 243].) In *Estate of Ruben*, 224 Cal.App.2d 600 at p. 607 [36 Cal.Rptr. 752], the probate court made its order confirming a referee's

report and a separate order admitting the will in question to probate. The appellate court in its opinion stated "the report of the referee contains findings of fact although they do not appear in the usual judicial format. Nevertheless, '[i]t was not necessary that the facts as found should be in any particular form or follow the pleadings. If the truth or falsity of each material allegation in issue can be demonstrated from the findings, the law is complied with. [Citations].' "

In the present case the court in its Memorandum of Decision first discussed the law and facts of the case in the usual memorandum of opnion style, and then stated: "From the foregoing the court finds as follows:" The court then listed in separate numbered paragraphs its findings of fact in the usual manner. Furthermore, the court in its order instructing trustee stated: ". . . the trustee and parties concerned are instructed in accordance with the *findings* made by the Court as set forth in the Memorandum of Decision filed herewith and attached hereto." (Italics added.)

■ The mere fact that the findings were contained in a memorandum of decision instead of a separate document does not invalidate them. If the findings are sufficient to support the order, and in this case they are, the form is not controlling, and the law has been complied with.

The case of *Estate of Shafer, supra,* cited by appellant, is clearly distinguishable. In that case findings of fact were filed. The memorandum of opinion was not intended by the trial court to constitute findings, and the appellate court was not going to allow it to be used for that purpose.

Appellant also contends that he was not served with a copy of the proposed findings and thus had no opportunity to make the statutory objections and counterproposals. He further states that the probate court represented that there would be findings and then did not direct either party to prepare them. ■ The law is clear that the judge may prepare his own findings. (See *Estate of Berry,* 195 Cal. 354 [233 P. 330].)

■ However, as to whether service on the opposing counsel is necessary where the trial judge prepared the findings, the court stated in *Estate of Rosland,* 76 Cal.App.2d 709 at p. 711 [173 P.2d 830], "To appellant's objection that findings were not served on him prior to the signing of the order there are two answers: (1) Section 634 of the Code of Civil Procedure is merely directory and the fact that proposed findings were not served on appellant five days before they were signed does not impair the validity of the judgment. [Citations] (2) Service of findings is not required where the court does not direct their preparation by either party [Citations]." In this case the court did not direct the preparation of findings by either party so appellant has no ground for complaint.

In view of our conclusion that the testatrix in her will intended to exclude adopted children, it is not necessary for us to consider the other contentions raised.

The Order Instructing Trustee is affirmed.

Draper, P. J., and Brown (H. C.), J., concurred.

A petition for a rehearing was denied January 9, 1970, and appellant's petition for a hearing by the Supreme Court was denied February 5, 1970.